CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY v. WILLIAMS, ADMINISTRATRIX.

[No. 20,845. Filed December 12, 1906. Rehearing denied March 19, 1907.]

1. PLEADING. — Complaint.—Paragraphs.—Overruling Demurrer to One. — Judgment on Others. — Answers to Interrogatories to Jury.—Master and Servant.—Employers' Liability Act. —Overruling a demurrer to a paragraph of complaint by a brakeman against the railroad company, under the latter part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, is harmless, where an answer to an interrogatory to the jury shows that such servant was not injured while conforming to an order of the conductor, but while performing his duty, without special orders, thus showing that the verdict was founded upon paragraphs counting on a violation of the first part of such subdivision, giving servants a right of action for injuries caused by the negligence of one in charge of a train.    p. 278.

2. MASTER AND SERVANT. — Vice-Principals. — Enlargement of Common-Law Class.—Employers' Liability Act.—The first part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, enlarges the common-law class of vice-principals.    p. 280.

3. NEGLIGENCE.—Employers' Liability Act.—Additional Liabilities.—The first part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, providing that railroad companies shall be liable for injuries caused by employes in charge of trains, creates liabilities which did not exist at the common law. p. 280.

4. SAME.—Employers' Liability Act.—Negligence of Vice-Principal while Acting as Fellow Servant.—Under the first part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, railroad companies are liable for the negligence of their vice-principals, as specified in such act, while in the performance of the duties of a fellow servant of the injured servant.    p. 281.

5. PLEADING. — *Complaint.—Necessary Allegations.—Employers' Liability Act.—Vice-Principals.—*A complaint, under the first part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, which shows that the employe in charge of the train negligently injured plaintiff, both being in the line of duty as employes of the company, is sufficient. p. 281.

6. STATUTES.—*Employers' Liability Act.—Purpose.—*The purpose of the first part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, making railroad companies liable for the negligence of those in charge of trains, etc., was to make certain the servants for whose negligence the companies are responsible. p. 282.

7. PLEADING.—*Complaint.—Amendments.—Time of Making.—*It is not erroneous to permit plaintiff to amend his complaint during the trial, without setting aside the submission of the case, where no prejudice to defendant's rights is shown by reason thereof. p. 283.

8. APPEAL.—*Briefs.—Instructions.—Failure to Set Out.—*Where appellant in its brief fails to set out all of the court's instructions, the Supreme Court may refuse to consider those complained of. p. 284.

9. RAILROADS. — *Negligence. — Evidence. —* Where the evidence showed that the conductor of defendant's train gave the engineer a back-up signal, while the brakeman was between two cars in making a coupling, and before such brakeman gave the conductor the signal to back, thus killing the brakeman, a verdict against such company is properly sustained. p. 284.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Minnie F. Williams, as administratrix of the estate of Francis Ora Williams, deceased, against the Chicago, Indianapolis & Louisville Railway Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*E. C. Field, H. R. Kurrie* and *Thomas & Foley,* for appellant.

*Clyde H. Jones, John D. Murphy* and *U. C. Stover,* for appellee.

MONTGOMERY, C. J.—Appellee, as administratrix of the estate of Francis Ora Williams, deceased, brought this

action to recover damages for the death of said decedent while in appellant's employ as a brakeman. The complaint originally contained five paragraphs, but appellee voluntarily dismissed the first and third of said paragraphs. Appellant's demurrer, on the ground of insufficient facts, was overruled to the amended second, fourth, and fifth paragraphs of complaint, and it answered by general denial. A trial by jury resulted in a verdict for appellee. The jury were required to return answers to special interrogatories with their general verdict, upon which appellant unsuccessfully moved for judgment in its favor. Judgment was entered upon the general verdict, and appellant's motion for a new trial was overruled.

It is charged that the court below erred in overruling demurrers to each of the amended paragraphs of complaint, in permitting the complaint to be amended during the trial, in overruling appellant's motion for judgment upon the interrogatories and the answers of the jury thereto notwithstanding the general verdict, and in overruling appellant's motion for a new trial.

The sufficiency of the amended second paragraph of complaint is vigorously assailed. This paragraph alleged that one Callahan was conductor of a certain train and had the charge and management of the movements of the train, and at the time and place of the accident was acting in the place and performing the duty of appellant corporation in that behalf, and had authority to direct the decedent and the other servants comprising the train crew as to their duties in and about the movement of said train, and in and about switching and making up of trains at the different stations along the line of their run; that Callahan ordered the decedent to couple a car that was standing on a switch at Ladoga, the coupler of which was defective, as described; that decedent attempted to make the coupling in pursuance of the order, but before he had given notice that he was ready Callahan carelessly

and negligently gave orders or signals to the engineer in charge of the engine aforesaid to. back said train against said car on which decedent was at work, whereby he was crushed and killed; that at the time he was killed he was conforming to the orders of said Callahan, who had charge of said train, and to whose orders he was required to conform.

Appellant's counsel earnestly insist that this paragraph of complaint was founded upon the latter part of the fourth subdivision of section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), and that it does not state a cause of action upon the theory of the pleader. In support of this contention it is asserted that the trial court so construed the theory of this paragraph, and charged the jury accordingly. Appellee's counsel answer that at appellant's request the court below gave the jury an instruction treating this paragraph as based upon the second subdivision of said statute. We are not required to pass upon the sufficiency of this paragraph of complaint under either subdivision of said section, since it affirmatively appears that the verdict rests upon the fourth and fifth paragraphs of the complaint, and not upon this one. In answer to the sixty-first interrogatory, the jury found the fact to be that the decedent was not acting at the special order or direction of any one, but only in obedience to the ordinary duties of his employment, at the time and place of the accident resulting in his death. This answer negatives a material averment of the second paragraph of complaint, and takes that paragraph out of consideration in determining the merits of this appeal. *Conner* v. *Andrews Land, etc., Co.* (1904), 162 Ind. 338, 345; *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663; *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 348, 44 L. R. A. 638.

The amended fourth and fifth paragraphs of complaint are conceded to be alike in theory and in substance. They are founded upon the first part of the fourth subdivision

of section one of the employers' liability act (§7083, *supra*). These paragraphs fully and specifically describe the situation and surroundings, and the act of Callahan, the conductor, charged as the negligence proximately causing the death of Williams. The point of the objection can be apprehended from the following quotations from the fourth paragraph, the fifth in this respect being substantially the same: "That at the time said Callahan gave said back-up signal, and at the time said Williams was killed, said Callahan was acting in the line of his duty and within the scope of his employment as conductor of said train, and at said time had charge and control of defendant's said train upon defendant's said line of railway for and in behalf of defendant."

Appellant's learned counsel frankly concede, as they must, that the provisions of the employers' liability act, upon which these paragraphs of complaint are predicated, enlarge the class of vice-principals as it existed at common law. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), *post*, 438; *Baltimore, etc., R. Co.* v. *Little* (1897), 149 Ind. 167; *Baltimore, etc., R. Co.* v. *Reed* (1902), 158 Ind. 25, 29, 56 L. R. A. 468, 92 Am. St. 293.

In the latter case it was expressly declared that, by the provision "that every railroad * * * operating in the State, shall be liable for damages for personal injuries suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence: * * * Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any * * * train upon a railway," a liability was created in this State where previous to the enactment of this statute none existed under the common-law rule.

In the face of this admission, appellant's counsel argue that "it has been uniformly held that the negligence of a

vice-principal, for which there is a liability, is negligence in the performance of one of his duties as vice-principal. Not simply the negligence of one who is a vice-principal, nor one who in the act out of which the negligence arises is simply performing the duty of a fellow servant. The negligence must be in performing an act in his superior capacity. It, therefore, follows that the liability for the negligence of one in charge or control of a train, for which a liability is here imposed, is negligence in doing some act which is an act of charge or control of a train done in his superior capacity, and not merely the negligence of such a one, occurring at a time when he is in charge or control of a train."

This argument is fallacious and untenable. If this were the true interpretation of this provision of the statute it would be practically meaningless. Without this part of the act a recovery could be had for an injury resulting from the negligence of any one in the performance of a duty owing by the master, and any employe, without regard to rank or title, while performing such duty has always been correctly styled a vice-principal. If a liability under this part of the statute can only arise on account of the negligence of the specifically named vice-principals while performing duties as such—that is, such as are owing by the master—then the class of vice-principals as it formerly existed has not been enlarged. It has been heretofore held by this court that the first part of the fourth subdivision of the act under consideration was independent of the latter part, and that an allegation such as contended for by appellant's counsel was unnecessary in a complaint founded upon the first part of this subdivision. In the case of *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 6, 69 L. R. A. 875, 71 Am. St. 300, it was announced as the opinion of the majority of the court, "that, in order to make the complaint good under the first part of the subdivision quoted, as to

the point in question, it is only required that it state that the engineer, while in the service of appellant, in charge of a locomotive engine, negligently injured the appellee, both being at the time acting in the line of duty as employes of the appellant." In the following cases, under similar allegations, railroad companies were held liable to employes injured by the negligence of engineers: *Pittsburgh, etc., R. Co. v. Moore, supra; Baltimore, etc., R. Co. v. Peterson* (1901), 156 Ind. 364; *Indianapolis Union R. Co. v. Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787; *Pittsburgh, etc., R. Co. v. Lightheiser, supra.*

As in case of an action for the negligence of one in charge of a locomotive engine, so, with respect to the point under consideration, in an action for the negligence 6. of a conductor, it is only necessary for the plaintiff to allege that he was injured, while in line of duty in the service of the railroad corporation and in the exercise of due care and diligence, by the negligence of another in the service of such corporation, who at the time had charge of one of its trains upon a railway and was acting within the scope of his employment. The very object of the provision under consideration was to abolish the rule contended for by appellant, and to avoid the confusion and difficulty before prevailing, as to whether an act of negligence on the part of any servant, specially enumerated, was that of the master or of a fellow servant. It is well understood that important and vital interests, involving the security of persons, property, and life, are dependent upon the care and prudence of those entrusted with the charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine or train upon a railway. The manifest purpose and intent of the law was to make these servants, to whom is committed by a railway company the charge of its property and authority to control and direct employes in the same service, the representatives of the common employer, and their acts, within the scope

of their employment, the acts of the company, and their negligence its negligence. If the act so construed and applied bears heavily upon railway companies, relief must be sought by limiting the duties of conductors to acts of charge and control, and, by the exercise of greater diligence that none shall be employed or retained for such service who are not distinguished for prudence, care, and watchfulness in the performance of duty. It follows that the averments of the fourth and fifth paragraphs of amended complaint must be held sufficient.

The motion for judgment in appellant's favor upon the answers of the jury to interrogatories is supported by the same argument advanced to overthrow the complaint, and for the reasons already stated this motion was rightly denied.

It is assigned in this court that the court below erred in permitting the complaint to be amended during the trial, without setting aside the submission. We need not

7. decide whether such assignment can be made for the first time in this court, since the same action was alleged as cause for a new trial. The statute expressly authorizes trial courts to grant leave to amend pleadings, at any time, and their acts in this respect will only be disturbed where an abuse of discretion is shown. Appellant has not pointed out to us the particular amendment made in this case or stated in what respects its rights were thereby affected. We are unable to say that the court abused its discretion, and are certain that no available error is made to appear in this connection. *Raymond* v. *Wathen* (1895), 142 Ind. 367; *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213; *Smith & Stoughton Corp.* v. *Byers* (1898), 20 Ind. App. 51.

It was further charged in the motion for a new trial that the court erred in giving and refusing to give certain instructions, and that the verdict is not sustained by sufficient evidence and is contrary to law.

All the instructions are not set out either in full or in substance in appellant's brief, and we would be justified, under the rules, in disregarding any question relating to them. The two instructions copied in the brief as given by the court, and of which complaint is made, were correct and in accord with the law as hereinbefore declared, and quite as favorable to appellant as it could rightfully require them to be.

The accident occurred between 1 and 2 o'clock a. m., February 26, 1900, at Ladoga. It was a very cold night, probably ten to fifteen degrees below zero, and the ground was covered with ice and sleet, and perhaps one or two inches of snow. The coupling apparatus of one of the cars to be taken into the train at that point was out of repair and defective. The conductor was superintending the movement of cars and assisting in the work by giving lantern signals. The decedent was rear brakeman, and was at the defective coupling, presumably inspecting and arranging it for a coupling to be made a little later. There was evidence to the effect that the conductor, without first receiving from the decedent a signal so to do, signaled the engineer and caused him to shove two cars down and against the one at which the decedent was engaged, and he was thereby crushed and instantly killed. The evidence further showed that the conductor was only a short distance away, and could see the position of the deceased by the lantern in his hand, that he knew this coupler was defective, and that, under the customs and usages of the business, no back-up signal should have been given to the engineer until the rear brakeman first indicated that he was ready.

The verdict of the jury is supported by the evidence, and is not contrary to law, and the motion for a new trial was properly overruled.

The judgment is affirmed.