## CRAWFORDSVILLE TRUST COMPANY, EXECUTOR, v. RAMSEY ET AL.

[No. 21,846. Filed April 16, 1912. Rehearing denied July 5, 1912.]

1. WILLS.—*Contests.*—*Persons Entitled to Sue.*—*"Any Person".*— Although §3154 Burns 1908, §2596 R. S. 1881, provides that any person may contest the validity of any will at any time within three years after the same has been offered for probate, the right of "any person" to contest a will is limited by §251 Burns 1908, §251 R. S. 1881, which provides that every action must be prosecuted in the name of the real party in interest, and, consequently, only those having an interest in the subject-matter of the will may contest its validity. p. 266.

2. ACTION.—*"Cause of Action".*—A cause of action is composed of the right of the plaintiff and the violation of an obligation or duty by the defendant, or the commission of some wrong by him,

which injuriously affects the plaintiff's right; the "action" to which the phrase refers, being the action of the state through its agent, the court, to which the suitor appeals. p. 267.

3. ABATEMENT AND REVIVAL.—*Survival of Actions.—Statutes.—Construction.*—Statutes changing the common-law rule in regard to the survival, and revival, of actions, are liberally construed. pp. 267, 269.

4. WILLS.—*Contest.—Special Proceeding.*—The statutory contest of a will is a special proceeding. p. 268.

5. WILLS.—*Contest.—Survival of Action.—Applicability of Rules of Civil Code.*—In the absence of any provision in the act concerning wills (§3153 et seq. Burns 1908, §2595 et seq. R. S. 1881), the rules of the civil code as to the survival of causes of action apply in a proceeding to contest a will. p. 271.

6. WILLS.—*Incapacity of Testator.—Effect of Will.*—Where a testator is without testamentary capacity, the will does not affect the right of an heir to take title by descent. p. 271.

7. WILLS.—*Contests.—Survival of Action.*—Where a will was executed by a person who was without testamentary capacity, a son of the testator had a vested interest in his father's estate on the death of the latter, and had a cause of action at common law against any one holding the property by virtue of such will, which survived under §§282-284 Burns 1908, §§281-283 R. S. 1881, providing for the survival of causes of action, so that on his death his heirs had the right to contest the will. p. 271.

8. APPEAL.—*Defects in Pleading.—Complaint.—When Deemed Amended on Appeal.*—Where, in the trial of a will contest, the plaintiffs proved without objection that the testator died the owner of real estate, the defect, if any, in the complaint arising from a failure to specifically allege that testator died the owner of real estate, being one that could have been amended in the trial court, will, under §700 Burns 1908, §658 R. S. 1881, be deemed on appeal to have been so amended. p. 273.

9. PLEADING.—*Complaint.—Theory.*—The theory of a complaint must be determined from its general tenor and character; that is, on the theory most clearly outlined by the leading averments. p. 274.

10. WILLS.—*Contests.—Complaint.—Construction.*—A complaint, in an action to contest a will brought by the widow and daughter of a deceased son of the testator, which alleged that the will was invalid for want of testamentary capacity, that after the probate of the will the executor paid to such deceased son the amount of a legacy provided for him in such will, and that at the time of making such payment the son was of unsound mind, that the receipt was procured through false representations by the executor, and that before filing the complaint the plaintiffs tendered to the

executor the sum paid, which was refused, is a complaint to contest a will under the provisions of §3154 Burns 1908, §2596 R. S. 1881, authorizing any person to contest the validity of a will. p. 274.

11. WILLS.—*Revocation of Probate.—Jurisdiction.—Courts of Equity.*—Courts of equity have no jurisdiction, independent of statute, in actions to revoke the probate of wills. p. 274.

12. WILLS.— *Contests.— Issues.— Trial.— Submission to Jury.*— Where a complaint to contest a will, in addition to alleging facts showing the invalidity of the will, alleged that after probate thereof the executor paid a legacy to the husband and father of plaintiffs, who was a deceased son of the testator and was of unsound mind at the time of such payment, and such executor procured a receipt from him by false representations, and that plaintiffs had tendered to the executor the amount of the legacy so paid and demanded a return of the receipt, which was refused, the facts so pleaded show a disaffirmance and rescission by act of plaintiffs and there was nothing to warrant a decree of rescission or cancelation by a court of equity, and, will contests being triable by jury, the court did not err in overruling a motion to submit the entire cause for trial by the court without the intervention of a jury. p. 274.

13. PLEADING.— *Complaint.— Theory.— Prayer for Relief.*— The theory of a complaint is to be determined by its averments of facts and not by the prayer for relief. p. 275.

14. APPEAL.—*Review.—Instructions.—Failure to Request Complete Instruction.*—Appellant cannot be heard to complain of an instruction which was correct as far as it went, where he failed to request a fuller instruction on the subject. p. 275.

15. WILLS—*Contests.—Instructions.—Assumption of Fact.—Mental Condition of Testator.*—In a will contest, an instruction that the son of testator, if of sound mind, and if possessed of knowledge of his father's mental condition, was bound by his acceptance of a legacy provided by the terms of his father's will, if he did under such circumstances accept the same, was not open to the objection that it assumed that the testator was laboring under some stress of mind that created a "mental condition". p. 276.

16. WILLS.—*Contests.— Witnesses.— Opinions.— Instructions.*— An instruction, in a will contest, which told the jury that the opinion of each lay witness who testified as to the mental condition of the testator should be tested by the facts on which it is based, and that it is not the opinion of such witnesses alone on which reliance is to be placed, but from the premises which supplied the conviction in the minds of such witnesses, the jury, aided by the opinions, may form its own inde-

pendent conviction and decide accordingly, is not open to the objection that it makes such opinions of primary importance and the facts on which they are based of secondary importance. p. 276.

17. WILLS.—*Contests.—Testamentary Capacity.—Instructions.—*An instruction on testamentary capacity, in a will contest, which stated that the testator is required to possess mind sufficient to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment toward him, their capacity and necessity, and that he shall have sufficient active memory to retain all these facts in his mind long enough to have his will prepared and executed, and that if he is in possession of mental faculties to this extent, he is of sound mind, but if he is not in possession of mental faculties to this extent, he is of unsound mind within the meaning of the law, was not erroneous. p. 277.

18. WILLS.— *Contests.— Testamentary Capacity.— Instructions.— Use of Intoxicating Liquor.—*In an action to contest a will on the ground of testamentary incapacity, an instruction that if it was established that testator's mind became weak from the use of intoxicating liquor, such fact might be considered by the jury in determining the condition of his mind, was not erroneous for failure to qualify "use" by the word "excessive". p. 278.

19. TRIAL.—*Instructions.—Effect on Instructions of Sentiment Caused by Political Issues.—*An instruction in a will contest that if the testator's mind became weak from the use of intoxicating liquor such fact might be considered by the jury in determining the condition of his mind, was not rendered erroneous by the fact that public opinion was greatly wrought up over political issues relating to the liquor traffic. p. 278.

20. WILLS.—*Contests.—Testamentary Capacity.—Disposition of Property.—Instructions.—*An instruction in a will contest, that if the jury found that the testator made an unreasonable or unnatural disposition of his property, such fact might be considered together with all the other evidence as bearing on the question of the testator's soundness of mind, was proper. p. 279.

21. APPEAL.—*Refusal of Instructions.—Waiver of Question.—Briefs.* —Appellants' failure to comply with Rule 22 of the Supreme Court by setting out in the brief the instructions refused, or their substance, waives their right to a consideration of such instructions. p. 279.

22. WITNESSES.—*Cross-Examination.—Contradictory Statements.—* Where a witness, in the trial of another cause, gave evidence of a transaction which was inconsistent with her evidence given on her direct examination, it was proper, on cross-examination, to examine her with reference to her former testimony. p. 280.

23. WITNESSES.— *Cross-Examination.— Form of Question.*— The form of a question on cross-examination, which first interrogates the witness as to the fact of testifying at a certain trial, and then as to the absence of a certain fact in that testimony, is objectionable although it calls for "yes" or "no" as an answer. p. 280.

24. APPEAL.—*Review.—Discretion of Trial Court.—Examination of Witnesses.*—The trial court is vested with discretion as to the methods of making proof of facts properly admissible in evidence, and, unless such discretion is abused, it will not be interfered with on appeal. p. 280.

25. WITNESSES.—*Cross-Examination.—Question Calling for Opinion Not Sought on Direct Examination.*—Where a physician testified as a nonexpert in the trial of a will contest, and was not asked on direct examination to give any opinion touching the condition of testator's mind, a question, on cross-examination, calling for such opinion, was properly excluded as not being proper cross-examination. p. 280.

26. APPEAL.—*Verdict.—Sufficiency of the Evidence.*—A verdict will not be disturbed on the ground that it is not supported by sufficient evidence, where there is some evidence to sustain all the material allegations of the complaint. p. 281.

From Boone Circuit Court; *Willett H. Parr,* Judge.

Action by Rosalind Ramsey and another against the Crawfordsville Trust Company, as executor of the will of Alexander F. Ramsey, deceased, and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*Crane & McCabe* and *Finley P. Mount,* for appellants.
*M. M. Bachelder* and *A. J. Shelby,* for appellees.

MORRIS, C. J.—Alexander F. Ramsey, of Montgomery county, died testate in March, 1907, leaving as his only heirs, his childless widow, Ice H. Ramsey, and a son and daughter by a former wife. His daughter, Hepsey B. Yount, died intestate in November, 1907, leaving as her only heirs, a husband and three minor children. His son, Charles P. Ramsey, died intestate in October, 1908, leaving as his only heirs Evelyn Ramsey, his widow, and Rosalind Ramsey, a daughter, aged twelve years, who are appellees herein.

The testator died the owner of real and personal property, which, in the complaint, is alleged to have been of the value

of $400,000. By his will, executed in February, 1907, and probated in the Montgomery Circuit Court shortly after his death, he bequeathed to his son Charles the sum of $3,000, and to the Crawfordsville Trust Company, as trustee, the sum of $1,500, which was directed to be used in educating said Rosalind. A large portion of the estate was devised and bequeathed to the Board of Commissioners of the County of Montgomery and the Crawfordsville Trust Company, jointly, in trust, for the benefit of the poor people of Crawfordsville. The will contains provisions for the benefit of testator's widow, and numerous bequests to various persons, and makes the daughter, Hepsey B. Yount, the residuary beneficiary. Appellant Crawfordsville Trust Company was named as executor of the will, and accepted the trust.

In November, 1908, after the death of Charles P. Ramsey, this action was commenced in the Montgomery Circuit Court by his widow and daughter, appellees, to contest the will of Alexander F. Ramsey. Afterwards, the venue of the cause was changed to the Boone Circuit Court.

The complaint alleges that in March, 1907, an instrument, purporting to be the last will of Alexander F. Ramsey, was admitted to probate by the Montgomery Circuit Court; that the same is invalid because said Ramsey, at the time of the execution thereof, was a person of unsound mind, and because the same was unduly executed.

It is further alleged that shortly after the probate of the will, the executor therein named paid to said Charles P. Ramsey the sum of $3,000, which was the amount of the legacy bequeathed to him by the terms of the will, and took from him a receipt for the legacy; that at said time Charles P. Ramsey was a person of unsound mind, and that the acceptance of the $3,000 and the execution of the receipt therefor were procured by the executor by means of certain false and fraudulent misrepresentations, which are set out in detail.

It is also alleged that before filing this complaint to con-

test, appellees tendered to the executor the sum of $3,000, and demanded the legacy receipt, which tender and demand the executor refused, and on the filing of the complaint appellees paid to the clerk the sum of $3,000, for the use and benefit of defendant Crawfordsville Trust Company, as executor, "in lieu of said money so paid to said Charles Ramsey, and have come into court with said money and tender it in court for the use and benefit of said executor of said estate of said Alexander F. Ramsey."

Appellees pray that the pretended will be declared invalid, that the probate thereof be set aside, and that the election of Charles P. Ramsey to take under the will be rescinded and held for naught.

All the living devisees and legatees named in the will, and the heirs of those who had died, were made parties defendant, as were also the executor and trustees therein named. A demurrer to the complaint, for insufficient facts, filed by the executor, was overruled, whereupon it filed an answer in two paragraphs, the first of which was a general denial. In the second paragraph it is alleged that immediately after the probate of the will, testator's son, Charles P. Ramsey, demanded of the executor the payment of the $3,000 legacy, and thereupon the same was paid to him, and he executed to the executor a receipt therefor, in which it is recited that the will of Alexander F. Ramsey has been read by the undersigned, and that the $3,000 is received in full payment of the legacy. The answer further denies the allegations in the complaint relating to fraud of the executor and to the unsoundness of mind of the legatee, and that by reason of the above facts plaintiffs are estopped from demanding any relief. Answers of general denial were filed by the other defendants.

The executor filed a motion to submit the issues to the court for trial without the intervention of a jury, on the ground that the suit was of equitable cognizance. This motion was overruled. Thereupon the executor filed a motion

to submit to the court, without the intervention of a jury, the issues in the cause touching the rescission of the election of Charles P. Ramsey to accept the legacy bequeathed him, and touching the rescission of the release by him executed. This motion was also overruled. The cause was tried by a jury, resulting in a verdict and judgment for appellees. The executor filed a separate motion for a new trial, which was overruled, as was also a like motion by the other defendants. From a judgment adjudging the will invalid, and revoking the probate thereof, and ordering the clerk to pay to the Crawfordsville Trust Company the $3,000 paid by plaintiffs for its benefit, this appeal is prosecuted.

Appellants insist that the lower court erred in overruling the demurrer to the complaint, because the right of Charles P. Ramsey to contest the will did not, on his death, survive to his heirs; that a will contest is not a civil action, but a special statutory proceeding, and is not governed by our statute relating to the survival of actions; that one not interested in the decedent's estate when the will was admitted to probate can never acquire the right to institute a proceeding to revoke the probate thereof.

The question raised here has never been decided by this court, and it requires a consideration of our statute relating to wills, and the probate and contest thereof, and of our statute relating to the survival of actions, and, incidentally, of some common-law rules.

The act prescribing who may make a will, and the effect thereof, and regulating the admission of wills to probate, and the contest thereof, was approved May 31, 1852, and is, with certain amendments, still in effect. 2 R. S. 1852 p. 308, §3112 *et seq.* Burns 1908, §2556 R. S. 1881. By its terms, all persons, except infants and persons of unsound mind, may execute a valid will. §3112 Burns 1908, §2556 R. S. 1881.

Section 3154 Burns 1908, §2596 R. S. 1881, provides that "any person may contest the validity of any will, or resist

the probate thereof, at any time within three years 1. after the same has been offered for probate, by filing in the circuit court * * * his allegation, in writing, * * * setting forth the unsoundness of mind of the testator, the undue execution of the will, that the same was executed under duress or was obtained by fraud, or any other valid objection to its validity or the probate thereof." It has been held, however, that the broad language concerning the right of "any person" to contest a will is limited by §3 of our code of civil procedure, approved June 18, 1852, which provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided" (2 R. S. 1852 p. 27, §251 Burns 1908, §251 R. S. 1881); and consequently only those having an interest in the subject-matter of the will may contest its validity. *Campbell* v. *Fichter* (1907), 168 Ind. 645, 81 N. E. 661, 11 Ann. Cas. 1089; *Thompson* v. *Turner* (1910), 173 Ind. 593, and cases cited on page 596, 89 N. E. 314.

Our civil code (§§282-284 Burns 1908, §§281-283 R. S. 1881, 2 R. S. 1852 p. 204) contains the following provisions relating to the survival of actions: §282. "In all cases where actions survive, they may be commenced by or against the representatives of the deceased to whom the interest in the subject-matter of the action has passed." §283. "A cause of action arising out of an injury to the person dies with the person of either party, except in cases in which an action is given for an injury causing the death of any person, and actions for seduction, false imprisonment, and malicious prosecution." §284. "All other causes of action survive, and may be brought by or against the representatives of the deceased party, except actions for promises to marry." Does the right to contest a will constitute a "cause of action", within the meaning of the foregoing provisions of our code? If so, it survives.

In *Baker* v. *State, ex rel.* (1887), 109 Ind. 47, 9 N. E. 711, this court, on page 61, approved the definition of "cause of

action'', included within the following quotation:

2. "In the case of *Veeder* v. *Baker* [1880], 83 N. Y. 156, 160, it was said: 'Jurists have found much difficulty in precisely defining a cause of action. (Pomeroy on Remedies §452.) It may be said to be composed of the right of the plaintiff and the obligation, duty or wrong of the defendant; and these combined, it is sufficiently accurate to say, constitute the cause of action.' "

In *American Surety Co.* v. *State, ex rel.* (1910), 46 Ind. App. 126, 131, 90 N. E. 99, 91 N. E. 624, it is said: "A cause of action may be said to arise out of a violation of duty by one person that injuriously affects the rights of another."

The phrase has also been defined as "the fact, or combination of facts, which gives rise to a right of action." 6 Cyc. 705; *Jerome* v. *Rust* (1909), 23 S. Dak. 409, 122 N. W. 344; *Davidson* v. *Fraser* (1906), 36 Colo. 1, 84 Pac. 695, 4 L. R. A. (N. S.) 1126.

In 1 Am. and Eng. Ency. Law and Pr. 1005, it is said: "In every case when a suitor in a court of law seeks to have the state act in his behalf, he must show a cause for action by the state; in other words, he must show that he has a cause of action." In an appended note, on the same page, it is said: "The action to which the phrase refers is the action of the state, through its agent, the court, to which the suitor appeals."

At common law, the death of a party before verdict abated the action, and if it did not belong to the class which survived, death put a final end to the suit. Otherwise it

3. could be prosecuted only by the plaintiff or his personal representative bringing a new action against the defendant or his personal representative. 1 Cyc. 47. The inconvenience and hardship of the common-law rule relating to remedies on the death of a party has resulted quite generally, as here, in the adoption of liberal statutes in regard to the survival and revival of actions. 1 Cyc. 48. And where

such statutes have been adopted, they have usually been liberally construed. In *Cooper* v. *Gorham* (1858), 45 Me. 209, it was said: "Judicial expositions of the statutes, which have been passed touching the survivorship of actions and causes of action, seem to have been made in the same liberal spirit which has led to the various enactments."

At common law, survival and assignability were generally tests each of the other. *Blake* v. *Griswold* (1887), 104 N. Y. 613, 11 N. E. 137. Ejectment actions abated on the death of the defendant. 1 Cyc. 57.

This court has frequently held that our statutory contest of a will is a special proceeding. *Summers* v. *Copeland* (1890), 125 Ind. 466, 25 N. E. 555; *McDonald* v. *Mc Donald* (1895), 142 Ind. 55, 41 N. E. 336; *Thompson* v. *Turner* (1910), 173 Ind. 593, 89 N. E. 314; *Chicago, etc., R. Co.* v. *Summers* (1887), 113 Ind. 10, 14 N. E. 733, 3 Am. St. 616; *Clearspring Tp.* v. *Blough* (1909), 173 Ind. 15, 24, 88 N. E. 511, 89 N. E. 369.

Will contests, in modern form, were unknown to the common law. Wills devising real property were not probated. If valid, they took effect immediately on the death of the testator. As muniments of title they were proved in ejectment or partition suits, in the same manner as deeds were. This led to the result that a will might be adjudged valid in one jurisdiction and invalid in another. Page, Wills §312; 16 Ency. Pl. and Prac. 993; *Knox* v. *Paull* (1891), 95 Ala. 505, 11 South. 156. The ecclesiastical courts had jurisdiction of testaments bequeathing personalty. These were required to be probated, either in "common form" or in "solemn form". The former was without notice to the next of kin, while the latter involved a proceeding requiring notice to all persons interested, and was effective against all. *Domestic, etc., Missionary Society* v. *Eells* (1896), 68 Vt. 497, 35 Atl. 463, 54 Am. St. 888; Page, Wills §§312, 313. However, if realty and personalty were devised and bequeathed by the same instrument, the ecclesiastical court probated it,

but the probate was not noticed by the common-law courts in respect to realty. *McArthur* v. *Scott* (1885), 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015.

The scope and effect of the modern statutory contest of wills closely corresponds to the probate, in solemn form, by the ecclesiastical courts, of testaments bequeathing personalty, except that modern contests determine the validity of the will as to all the property disposed of, instead of limiting the judgment to personalty; and except, further, that in most jurisdictions statutory contests must be filed within a comparatively short period (in Indiana three years) after the "common" or *ex parte* probate. At common law, at any time within thirty years after the probate in common form the executor might be compelled by any interested person to prove it in solemn form. *Luther* v. *Luther* (1887), 122 Ill. 558, 13 N. E. 166.

It thus appears that modern statutory contests furnish a more comprehensive and efficacious procedure for determining the validity of wills, and, in some respects provide a more efficient remedy than did the common law, though, in most cases, the latter provided a remedy in some form, but often at the expense of a multiplicity of suits. Our statute

3. relating to the survival of actions has frequently been construed by this court.

In *Davis* v. *State, ex rel.* (1889), 119 Ind. 555, 22 N. E. 9, a proceeding was instituted by filing a claim against a decedent's estate to recover a statutory penalty for which the intestate became liable in his lifetime. The suit was to recover a penalty imposed by §6339 R. S. 1881, §10204 Burns 1908, on persons making fraudulent tax lists. It was conceded that, at common law, the cause of action died with the person, but it was held that by virtue of our statute it survived. The opinion was rendered by Mitchell, J., in the course of which it was said: "In *Western Union Tel. Co.* v. *Scircle, supra* [(1885), 103 Ind. 227, 2 N. E. 604], the court, in giving a construction to this last section, said: 'When

it is granted, as it must be, that there is a cause of action, and that it is not for an injury to the person, it follows with absolute logical certainty that the cause of action survives by force of the statute.' This reasoning is conclusive of the question in the present case. If there was a cause of action of a civil nature to enforce a penalty incurred under the statute existing at the death of Bowman, it survived against his personal representative by force of the statute. Jurists have found much difficulty in precisely defining a cause of action. Pomeroy, Remedies §432. Generally speaking, it is the right which a party has to institute and carry through a proceeding. Anderson Law Dict., 157.''

*Western Union Tel. Co.* v. *Scircle, supra,* was to recover a statutory penalty for refusing to deliver a telegram, and it was held that the cause of action survived the death of the original party in interest.

In *Feary* v. *Hamilton* (1895), 140 Ind. 45, 39 N. E. 516, this court said: ''The rule is that where the injury complained of affects primarily and principally property and property rights, * * * the cause of action survives.''

In *Burnett* v. *Milnes* (1897), 148 Ind. 230, 46 N. E. 464, an application to admit a will to probate was contested, and resulted in a judgment refusing its admission. Afterwards a proceeding was instituted by one of the legatees—a married woman — to vacate the judgment for fraud. Before an answer was filed, the suing legatee died intestate, and by order of court her administrator and heirs were substituted as parties plaintiff. In passing on the effect of our statute, which provides that no action shall abate by the death of a party if the cause of action survives (§272 Burns 1908, §271 R. S. 1881), this court said: ''The death of the wife did not cause the action to abate. Section 272 Burns 1894. Appellant was in court to answer the cause of action set forth in the original complaint. The cause of action was not changed by the death of said plaintiff, and her administrator was properly substituted as a plaintiff, and the husband and

daughter having an interest in the cause of action as her heirs were also proper parties plaintiff after her death.''

This court has ever placed a liberal construction on the statute providing for survival of actions, as shown by a consideration of the opinions. *Pittsburgh, etc., R. Co.* v. *Swinney* (1884), 97 Ind. 586; *Brown* v. *Clow* (1902), 158 Ind. 403, 62 N. E. 1006; *State, ex rel.,* v. *Houston* (1837), 4 Blackf. 291; *Hess* v. *Lowrey* (1890), 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90, 17 Am. St. 355; *Davidson* v. *Koehler* (1881), 76 Ind. 398; *American Surety Co.* v. *State, ex rel., supra; Gimbel* v. *Smidth* (1856), 7 Ind. 627; *Newman* v. *Gates* (1905), 165 Ind. 171, 174, 72 N. E. 638, 6 Ann. Cas. 649.

It by no means follows that because a will contest is a special proceeding it is not affected by our code of civil procedure. As before noted, in regard to the rights of parties to institute the proceeding, the broad provisions of the statute are limited by certain sections of our civil code. *Thompson* v. *Turner, supra.* In *Chicago, etc., R. Co.* v. *Summers, supra,* it was said: ''It has often been held by this court, and correctly so, we think, that the modes of procedure and rules of practice prescribed by our civil code in civil actions are all applicable to a special statutory proceeding for the enforcement of private rights.'' Where, as here, the act (concerning wills) contains no provision relating to the survival of the action, we perceive no good reason why the rules of the civil code do not apply. *Campbell* v. *Fichter, supra.*

In this complaint it is alleged that the testator was without testamentary capacity. In such case the will did not affect the right of Charles P. Ramsey to take title by descent. (*Mason* v. *Roll* [1892], 130 Ind. 260, 263, 29 N. E. 1135); consequently he had a vested interest in his father's estate on the death of the latter. Under any definition of the phrase, Charles P. Ramsey had a ''cause of action'' at common law against any one holding possession of his property by virtue of an invalid will, and it

follows that, under our statute, this cause of action survived, and his heirs had the right to contest the will.

Counsel for appellants call our attention to the decisions of this court in *Heavenridge* v. *Nelson* (1877), 56 Ind. 90, and *Eltzroth* v. *Binford* (1880), 71 Ind. 455, wherein it was held that the right of a widow, conferred by statute, to accept or reject the provisions for her made in her husband's will is personal, and can be exercised by her alone, and claim that the doctrine there announced is applicable here. We think the position is untenable under our statute. The law in force when *Heavenridge* v. *Nelson, supra,* was decided, gave to the surviving widow a certain interest in her deceased husband's property. 1 R. S. 1876 p. 411. Another section of the act provided that if the husband left a will, the widow might elect to take under it, instead of the law. She was simply given the right to choose between the provisions of the law and those of the will. This in nowise constituted a cause of action. The widow had no occasion to seek the action of the State, through its courts, to aid her. There was no wrong to remedy. She had the right to choose, and this right was personal to her. If she had not the mental power to exercise the choice, her property rights were determined by other provisions of the statute.

Counsel for appellants, under-their proposition that this cause of action did not survive, cite a number of Illinois authorities which support their contention. *Storrs* v. *St. Luke's Hospital* (1899), 180 Ill. 368, 54 N. E. 185, 72 Am. St. 211; *McDonald* v. *White* (1889), 130 Ill. 493, 22 N. E. 599; *Jele* v. *Lemberger* (1896), 163 Ill. 338, 45 N. E. 279; *Selden* v. *Illinois Trust, etc., Bank* (1909), 239 Ill. 67, 87 N. E. 860, 130 Am. St. 180. In the last cited case, among the reasons given for holding that the right to contest a will does not survive, is that such right is not assignable. Another reason given is that in Illinois an action to recover a statutory penalty does not survive the death of the defendant. Whether in that state there is a statute governing the survival of actions, or

Crawfordsville Trust Co. *v.* Ramsey—178 Ind. 258.

whether the same is determined by the rules of the common law, does not appear from the opinion; but, in any event, we do not think these decisions applicable to such a statute as ours, even if the statute were construed strictly, instead of liberally.

It is finally contended that the complaint is insufficient, because it is not directly averred therein that the testator died the owner of any real estate, and it is averred that 8. there is an acting administrator of the estate of Charles P. Ramsey; that consequently plaintiffs had no right to contest a will which alone disposed of personalty.

Assuming, without deciding, that under the allegations of the complaint appellees would have no right to contest this will unless Alexander F. Ramsey died the owner of real estate, this court would not be warranted in reversing the judgment for the defect in question.

The complaint alleges that by the terms of the will the defendants are given "the whole of the property of said Alexander F. Ramsey, real and personal, of the value of $400,000, to the exclusion of * * * Charles Ramsey." Appellants contend that the above is merely a recital, and does not constitute an averment of ownership of real estate. In view of the state of the record, it is unnecessary to decide this point. At the trial, without objection, plaintiffs proved that Alexander F. Ramsey died the owner of real estate of great value.

Section 700 Burns 1908, §658 R. S. 1881, provides that this court shall not reverse a judgment for any defect in form, in any pleading, which might be amended by the court below, but such defect shall be deemed to be amended in the Supreme Court. If the complaint was defective in the particular claimed, the court below could have permitted it to have been amended so as to conform to the evidence, and consequently this court must deem it to be so amended. *Noble* v. *Davidson* (1912), 177 Ind. 19, 96 N. E. 325, and cases cited.

It is urged that there was error in trying the issues by a jury, particularly what is termed the issue of rescission of the agreement of Charles P. Ramsey in accepting the legacy. These questions arise on the motions heretofore noted.

9. The theory of a complaint must be determined from its general tenor and character; that is, on the theory most clearly outlined by the leading averments. *State, ex rel.,* v. *Scott* (1908), 171 Ind. 349, 353, 354, 86 N. E. 409, and cases cited. Tested by this rule, the complaint 10. must be held one to contest a will under §3154 Burns 1908, §2596 R. S. 1881.

It is a rule recognized both in England and in this country that courts of equity have no jurisdiction, independent of statute, in actions to revoke the probate of wills. 11. *Gaines* v. *Fuentes* (1875), 92 U. S. 10, 23 L. Ed. 524; *Broderick's Will* (1874), 21 Wall. 503, 22 L. Ed. 599; 2 Pomeroy, Eq. Jurisp., §913; *Archer* v. *Meadows* (1873), 33 Wis. 166; *Webb* v. *Claverden* (1742), 2 Atk. 424; *Luther* v. *Luther, supra.*

Section 418 Burns 1908, §409 R. S. 1881, provides 12. that causes which, prior to June 18, 1852, were of exclusive equitable jurisdiction, shall be tried by the court; but, prior to that date, will contests, by the express terms of the statute, were triable by jury. R. S. 1843 p. 497.

The lower court did not err in overruling the motion to submit the entire cause to the court for trial without the intervention of a jury. *Lamb* v. *Lamb* (1886), 105 Ind. 456, 5 N. E. 171, and authorities cited. We do not think the court erred in refusing to submit what is termed by appellants, the issue of rescission, to the court, without the intervention of the jury.

It is appellants' theory that the complaint is dual in its nature, and seeks not only to contest the will, but to procure a decree in equity rescinding the acceptance of the legacy. The only basis for this theory is found in the prayer for relief, at the conclusion of the complaint, wherein plaintiffs

pray that the election of Charles P. Ramsey to take under the will be rescinded, and that his receipt for the legacy be canceled. It may be said, in passing, that the lower court, in its judgment, granted no such relief. The facts pleaded show a disaffirmance and rescission by act of plaintiffs. The amount of the legacy received was tendered the executor before suit was brought. No fact is alleged that would have warranted a decree of rescission or cancelation by a court of equity. *Higham* v. *Harris* (1886), 108 Ind. 246, 8 N. E. 255; *Gatling* v. *Newell* (1857), 9 Ind. 572; *Fisher* v. *Wilson* (1862), 18 Ind. 133; *Patten* v. *Stewart* (1865), 24 Ind. 332; *Harper* v. *Terry* (1880), 70 Ind. 264; *Hunt* v. *Blanton* (1883), 89 Ind. 38; *Tarkington* v. *Purvis* (1891), 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607; 9 Cyc. 433; 1 Story, Eq. Jurisp. (12th ed.) §692.

13. The theory of a complaint is to be determined by its averments of facts, and not by the prayer for relief. *State, ex rel.,* v. *Ogan* (1902), 159 Ind. 119, 63 N. E. 227; *Guffey* v. *McClain* (1892), 130 Ind. 327, 30 N. E. 296. *Comegys* v. *Emerick* (1893), 134 Ind. 148, 33 N. E. 899, 39 Am. St. 245; *West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21, 26, 72 N. E. 879. Whether in an action to contest a will the court has power to grant any equitable relief, need not be determined here, because the facts averred in the complaint pleaded only a rescission by act of the plaintiffs, and consequently the court did not err in overruling appellants' motion.

14. In instruction four, given by the court on its own motion, the jury was informed that, in weighing the evidence, "you *may* take into consideration the interest, if any, that any of the witnesses have in the result of this trial," etc. (Italics, here and throughout opinion, ours.) It is contended that the word "should," instead of "may," ought to have been used, and *Southern R. Co.* v. *State* (1905), 165 Ind. 613, 75 N. E. 272, and *Strebin* v. *Leavengood* (1904), 163 Ind. 478, 71 N. E. 494, are cited. It is a

sufficient answer to appellants' contention to say that if a party desires a fuller instruction than the one given, it is his duty to make the appropriate request. The charge, as far as it went at least, was correct, and appellants having failed to request any instruction on the subject, cannot be heard to complain. *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, 72 N. E. 571; *Bishop* v. *Redmond* (1882), 83 Ind. 157.

Instruction six, given by the court, informed the jury, on the subject of the avoidance of the acceptance of the legacy by Charles P. Ramsey, as follows: "Charles Ramsey, if of sound mind, was bound to know the law and the legal consequences of his own voluntary act in accepting the legacy of $3,000 provided by the terms of his father's will; and if he was possessed of *knowledge of his father's mental condition*, and if he did, under such circumstances, accept such legacy, then he was bound by such acceptance," etc. The italicised phrase is also used in instruction seven, given by the court. Both instructions are criticised for the use of the italicised phrase. It is contended that the jury should have been instructed that Charles P. Ramsey must have known "the facts concerning his father's mental condition." The italicised phrase is also criticised because, appellants contend, it assumes that Alexander F. Ramsey, when he executed the will, was laboring under some stress of mind that created a "mental condition." We do not consider the use of the phrase as erroneous.

16.    Complaint is made of instruction eight, given by the court, because, it is claimed, the court made the *opinions* of lay witnesses of primary importance, and the facts on which the opinions were based of secondary importance. The instruction is as follows: "Lay witnesses have testified before you as to facts concerning the appearance, manner, conduct and conversations of Charles Ramsey and also of Alexander F. Ramsey, and have, from such facts, given to you their opinions as to the soundness or unsoundness of the minds of

said Charles Ramsey and also of the said Alexander F. Ramsey; but each opinion should be tested by the facts upon which it is based in order to judge of its probable correctness. It is not the opinion of such witnesses alone upon which reliance is to be placed, but from the premises which supplied the conviction in the minds of such witnesses the jury, aided by these opinions, may form its own independent conviction and decide accordingly.'' The instruction is not open to the objection made by appellants.

Instruction eleven, given by the court, was as follows: ''The law does not undertake to measure a person's intellect and to define the exact quality of mind and memory, which he shall possess to authorize him to make a will, yet it does require him to possess mind sufficient to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment toward him, their capacity and necessity, and that he shall have sufficient active memory to retain all these facts in his mind long enough to have his will prepared and executed. If he is in possession of mental faculties to this extent, he is of sound mind within the meaning of the law, *but if he is not in possession of mental faculties to this extent, he is of unsound mind within the meaning of the law.''* Appellants contend that this instruction, and particularly the italicised portion thereof, is erroneous, because the test of testamentary capacity is too strict, and they cite, in support thereof, *Barricklow* v. *Stewart* (1904), 163 Ind. 438, 442, 443, 72 N. E. 128. The instruction given by the court was evidently copied from one approved by this court in *McReynolds* v. *Smith* (1909), 172 Ind. 336, 345, 346, 86 N. E. 1009. In that case the court explained the Barricklow case, and pointed out the obvious distinction between knowledge and the capacity to know. *Roller* v. *Kling* (1898), 150 Ind. 159, 164, 49 N. E. 948; *Brown* v. *Mitchell* (1889), 75 Tex. 9, 12 S. W. 606; *Kerr* v. *Lumsford* (1888), 31 W. Va. 659, 8 S. E.

493, 2 L. R. A. 688; *Taylor* v. *McClintock* (1908), 87 Ark. 243, 112 S. W. 405; *In re Livingston's Will* (1897), 37 Atl. (N. J.) 770; *Havens* v. *Mason* (1905), 78 Conn. 410, 62 Atl. 615, 3 L. R. A. (N. S.) 172. The instruction dealt only with testamentary capacity, and was not erroneous. Had it applied the same test to testator's actual knowledge, a different question would have been presented. *Havens* v. *Mason, supra.* The italicised portion of the instruction likewise dealt with the definition of testamentary capacity, and was not erroneous.

Instruction thirteen, given by the court, informed the jury, among other things, that if it was established by a preponderance of the evidence that testator's mind became weak from the use of intoxicating liquor, such fact might be considered by the jury in determining the condition of his mind. This instruction is criticised, (1) because the court did not qualify "use" by the word "excessive". This criticism is untenable. If the use of intoxicating liquor weakened the mind of the testator, it was a proper matter for the jury's consideration, regardless of whether the impairment resulted from the use of large or small quantities thereof.

It is further claimed that at the time of the trial (spring of 1910) public opinion in this State was greatly wrought up over political issues relating to the liquor traffic, and many men, probably including members of the jury, were constrained to believe that the use of intoxicating liquors in any form, or to any extent, was an evidence of insanity, and consequently this instruction was harmful to appellants. This theory is speculative merely. If it were not, a party litigant cannot be deprived of his legal rights by the intervention of political issues, whatever such issues may be. The instruction was not erroneous.

By instruction three, requested by plaintiffs, and given, the court told the jury that if it found from all the evidence given in the cause that the testator made an unreasonable or

unnatural disposition of his property, such fact might be considered, together with all the other evidence, as bearing on the question of the testator's soundness of mind. This instruction was not erroneous, under the rule recognized by this court. *Gurley* v. *Park* (1893), 135 Ind. 440, 35 N. E. 279; *Lamb* v. *Lamb, supra; Conway* v. *Vizzard* (1890), 122 Ind. 266, 23 N. E. 771; *Roberts* v. *Abbott* (1891), 127 Ind. 83, 26 N. E. 565.

Complaint is made that the court erred in refusing to give appellants' tendered instructions eleven and twenty-one. In their brief, neither of the instructions, nor the substance thereof, is set out.

Rule 22 of this court provides that appellants' brief shall contain "a concise statement of so much of the record as fully presents every error and exception relied on," etc. Appellants' failure to comply with this rule waives their right to a consideration of the two instructions. *Consolidated Stone Co.* v. *Morgan* (1903), 160 Ind. 241, 66 N. E. 696; *Cleveland, etc., R. Co.* v. *Stewart* (1903), 161 Ind. 242, 68 N. E. 170; *Chicago, etc., R. Co.* v. *Williams* (1907), 168 Ind. 276, 79 N. E. 442.

In their points and authorities, appellants question the action of the court relating to other instructions given and refused. These have been considered, and we are of the opinion that the court committed no reversible error in respect thereto.

Ice H. Ramsey, widow of testator, was examined as a witness, by plaintiffs. On cross-examination she was asked the following question : "Q. I will ask you if on the trial of your case at Frankfort you didn't testify about this circumstance of Mr. Ramsey sitting at that desk and your coming in and found Miss Pursel with her hand on your husband's shoulder, and if it isn't true that in your testimony in regard to that circumstance and in regard to your going home, you never, at any time said in that testimony that Mr. Ramsey said, I don't remember what I was doing?" The court

sustained an objection to the question, and this action is claimed to be erroneous.

If the witness, in a trial of another case, gave evidence of a transaction which was inconsistent with her evidence given on her direct examination, it was proper, on cross-examination, to examine her with reference to her former testimony. *Hyland* v. *Milner* (1884), 99 Ind. 308. The form of this question, however, was objectionable. It calls for "yes" or "no", as an answer, but first interrogates her as to the fact of testifying at the Frankfort trial, and then as to the absence of a certain fact in that testimony. The first part of the question might have been answered in the affirmative, and the latter part in either the affirmative or the negative, with resulting and unnecessary confusion, while the opportunity of cross-examining the opposing party's witness is a matter of right, a large amount of discretion is vested in the trial court in regard to the methods used in making the proof of facts properly admissible in evidence, and unless this discretion is abused an appellate court will not interfere. 8 Ency. Pl. and Pr. 109.

Plaintiffs examined as a nonexpert witness Doctor John N. Taylor, who was testator's physician. The witness was not, on direct examination, asked to give any opinion touching the condition of testator's mind. On cross-examination, appellants asked the witness the following question: "Now, doctor, as a medical man and from a medical standpoint I will ask you to state whether or not Mr. Ramsey was, at the time you saw him and talked with him a person of sound or unsound mind." The court sustained appellees' objection to the question, because it was not proper cross-examination. There was no error in this. No opinion was sought from the witness on direct examination. *Johnson* v. *Wiley* (1881), 74 Ind. 233; *Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 41 N. E. 336; *Bower* v. *Bower* (1895),

142 Ind. 194, 41 N. E. 523 ; 8 Ency. Pl. and Pr. 102 ; 1 Greenleaf, Evidence (Lewis's ed.) §445. Appellants by making the doctor their own witness were privileged to elicit the desired information. Had the court overruled the objection, and permitted the witness to answer the question, its discretion might not have been reviewable here, under the authority of *Westfall* v. *Wait* (1905), 165 Ind. 353, 358, 73 N. E. 1089, 6 Ann. Cas. 788, but such question is not here presented.

Other minor questions are raised by appellants in regard to the admission and exclusion of evidence, but a consideration of them discloses no error warranting a reversal of the judgment.

Counsel for appellants earnestly contend that the verdict is not supported by sufficient evidence. An examination of the record discloses some evidence to sustain all the material allegations of the complaint. This court cannot weigh the testimony of the witnesses. There is no error which would warrant a reversal.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 177. See, also, under (1) 40 Cyc. 1241 ; (2) 1 Cyc. 641 ; (3) 36 Cyc. 1173, 1188 ; (4) 40 Cyc. 1240 ; (6) 14 Cyc. 54 ; (7) 40 Cyc. 1244 ; (8) 3 Cyc. 291 ; (9) 31 Cyc. 84 ; (10) 40 Cyc. 1268 ; (11) 40 Cyc. 1252 ; (12) 40 Cyc. 1319 ; (13) 31 Cyc. 84 ; (14) 38 Cyc. 1693 ; (15) 40 Cyc. 1334 ; (16) 38 Cyc. 1736 ; (17) 40 Cyc. 1335 ; (19) 38 Cyc. 1683 ; (20) 40 Cyc. 1337 ; (21) 2 Cyc. 1014 ; (22) 40 Cyc. 2708 ; (23) 40 Cyc. 2714 ; (24) 3 Cyc. 336 ; (25) 40 Cyc. 2517 ; (26) 3 Cyc. 348. As to relief in equity from orders and decrees in probate courts, see 106 Am. St. 639. As to the jurisdiction of equity to construe a will, see 129 Am. St. 78. As to the acceptance of a benefit under a will as affecting the right to attack its validity, see 3 Ann. Cas. 525. What is testamentary capacity, see 27 L. R. A. (N. S.) 2. For drunkenness as affecting testamentary capacity, see 39 L. R. A. 220. On the question of opinion evidence by nonexpert as to testamentary capacity of another, see 37 L. R. A. (N. S.) 591. As to the right of a witness to give opinion in respect to mental capacity in will contest, see 36 L. R. A. 66. As to what evidence is admissible as bearing on the credibility of a witness, see 82 Am. St. 25.