IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1909, IN
THE NINETY-THIRD AND NINETY-FOURTH
YEARS OF THE STATE.

---

## SIMPLEX RAILWAY APPLIANCE COMPANY v. WESTERN RAWHIDE AND BELTING COMPANY ET AL.

[No. 21,222. Filed June 10, 1909. Rehearing denied October 12, 1909.]

1. APPEAL.—*Bills of Exceptions.—Failure of Record Entry.—Certiorari.*—A failure of the transcript to show, by an order-book entry, the filing of the bill of exceptions, is not harmful, where the appellant, by a writ of *certiorari*, has supplied the missing entry.   p. 3.

2. APPEAL.—*Bills of Exceptions.—Including Evidence Only on Point Discussed.—Damages.*—Where the sufficiency of the evidence to sustain the damages given is the only point raised on the evidence, it is not necessary to include evidence on any other point.   p. 3.

3. APPEAL.—*Briefs.— Setting Out Evidence.— Corrections.*—Appellant's statement of the evidence will be considered as correct, unless appellee points out errors therein.   p. 3.

4. APPEAL.—*Briefs.—Instructions.—Failure to Include All.—Duty of Appellee.*—Where appellant sets out in its brief only the questioned instructions, they will be considered as being the only ones applicable to the points involved, unless appellee sets out others modifying them, referring to the lines and pages of the transcript where found.   p. 4.

5. APPEAL.—*Assignments of Errors.—Recitals.*—An assignment that "there is manifest error in the proceedings and judgment in the court below in said cause in this, to wit: * * * (2) error of the court in overruling the defendant's motion for a new trial," is not a recital, and is sufficient.   p. 5.

6. NEW TRIAL.— *Grounds.— Exclusion of Evidence.— Appeal.—* No question on the improper exclusion or admission of evidence can

be raised on appeal, unless such exclusion or admission is made a reason in the motion for a new trial. p. 8.

7. EVIDENCE.— *Damages.*— *Manufactories.*— *Profits.*— In an action for the defendant's negligent destruction of plaintiff's manufactory and business, evidence of plaintiff's past and present profits is admissible to assist the jury in determining the damages. p. 10.

8. TRIAL.—*Instructions.*—*Damages.*—*Destruction of Business.*—In an action for damages caused by defendant's destruction of plaintiff's manufactory and business, an instruction that the plaintiff is entitled to the value of the property destroyed, and in addition, to damages for the "destruction of, interruption of, or injury to, said business," and that in determining damages to such business the jury might consider "the character, condition and extent of such business at the time of the fire, and the net profits, if any, which were then accruing therefrom, and the reasonable prospects of a continuation of profits, and from these considerations [the jury should award] a fair compensation for the destruction of, interruption of, or injury to, said business," is misleading and tends to confuse the jury. p. 12.

9. TRIAL.—*Instructions.*—*Damages.*—*Destruction of Business.*—In an action against defendant for the negligent destruction of plaintiff's business, an instruction that in determining the length of time required by plaintiff, by the use of reasonable diligence, for the reëstablishment of its business, the jury might consider not only the time reasonably necessary in which to secure a location, building and equipment, but also the time reasonably necessary in which to reëstablish the lost patronage and trade, is incorrect, especially where the evidence showed that the company was located at Hammond, Indiana, and after the destruction of its factory, it moved to Milwaukee, Wisconsin, where it reincorporated. p. 13.

From Porter Circuit Court; *W. C. McMahan,* Judge.

Action by the Western Rawhide and Belting Company and others, against the Simplex Railway Appliance Company. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*Winston, Payne, Strawn & Shaw* and *Agnew & Tinkham,* for appellant.

*E. D. Crumpacker, Peter Crumpacker* and *Daniel J. Moran,* for appellees.

JORDAN, J.—The Western Rawhide and Belting Company,

a corporation, commenced this action in the Lake Circuit Court in April, 1904, to recover from appellant, a corporation, damages claimed to have been sustained as the result of its negligence in causing a fire to originate in its own premises, which fire it permitted and caused to be spread to the factory of appellee belting company, thereby destroying the same, and damaging in part and destroying in part the contents of said factory.

Before passing to a consideration of this appeal on its merits, we shall take up the preliminary points raised by said appellee: (1) That the bill of exceptions containing the evidence is not in the record, for the reason that there is no entry to show the filing thereof; (2) that counsel for appellant have not complied with the rules of this court, for the reason that they have not set out all of the evidence in the case in narrative form. The transcript, as corrected by the *certiorari*, exhibits a vacation entry by the clerk, properly showing the filing of the bill of exceptions containing the evidence, and therefore said appellee's contention, that there is no entry showing the filing thereof, is not sustained.

In regard to the second objection, it may be said that the only point which appellant raises upon the question of the evidence is that there is neither sufficient, competent nor legal evidence in the record to fix the damages sustained by appellee company on account of the fire, and for this reason the judgment should be reversed. Upon this question counsel for appellant assert that they have set out all the evidence given in the cause upon the question of damages. Under these circumstances they were not required by our rules, as counsel for appellees insist, to set out evidence which had no bearing whatever upon the question of damages. The evidence set forth by appellant under rule twenty-two of this court will be accepted as correct, in the absence of any corrections or additions made thereto by appellees,

The record discloses that the trial court refused to give any and all instructions tendered and requested by either appellant or appellees, but gave to the jury on its own motion twenty-five instructions. The giving of each of these is assigned as error in appellant's motion for a new trial. In its brief appellant sets out certain of these instructions, each of which it criticises as erroneous. But we are, however, confronted by the contention of appellees that because appellant has not set out all the instructions given by the court it has not complied with rule twenty-two, and therefore it is not in a position to seek a review of those to which it objects. It is asserted that the court in this appeal cannot, in the absence of all the other instructions from the brief, determine whether the errors of which appellant complains, in respect to those set forth in its brief, are available, for the reason that a comparison thereof with the others given in the case may show that the errors, if any, have been obviated or cured by the latter instructions. This contention is not tenable, and has no support under the provisions of rule twenty-two of this court. This rule provides, among other things, that appellant's brief shall contain a concise statement of so much of the record as fully presents every error and exception relied on, referring to the pages and lines of the transcript, and that "the statement will be taken to be accurate and sufficient for a full understanding of the questions presented for decision, unless the opposite party in his brief shall make necessary corrections or additions." If the errors, with which appellant claims the instructions set out in its brief are impressed, are in any manner obviated or cured by the other instructions given in the case, the duty devolved upon appellees, under rule twenty-two, to call the attention of the court to such fact or facts, citing the court to the pages and lines where the instructions upon which they relied for that purpose might be found.

Appellant has assigned errors as follows: "There is manifest error in the proceedings and judgment in the court below

in said cause in this, to wit: (1) The plaintiffs' complaint does not state facts sufficient to constitute a cause of action; (2) overruling the defendant's motion for a new trial." Counsel for appellees insist that the second specification is not proper, and presents no question, for the reason that it is a mere recital and not a direct averment. It is claimed that the rules of procedure applicable to pleadings in the trial court must control, and as the assignment in question is not an averment of a fact, but a mere recital thereof, it, for this reason, must fail, and therefore no questions upon the overruling of the motion for a new trial are presented. It will be noted, however, that there is a positive averment in the introductory part of the assignment that there is manifest error in the proceedings and judgment in the court below, and one of the errors, as pointed out by the second specification, is that of overruling defendant's motion for a new trial. In considering the pleading as an entirety, we are of the opinion that the second specification is sufficient.

The facts in the case show that the fire in controversy occurred on August 2, 1901. A short time thereafter appellee belting company received upon policies of insurance which it held $40,000 on account of the loss caused by the fire. The insurance companies that had paid $38,000 of this amount intervened in this action and prayed judgment against the defendant for the separate amounts that each had paid to appellee belting company. The insurance companies further prayed that any judgment entered against defendant be in their favor respectively for the amounts so paid by them to the appellee belting company. The venue of the cause was changed to the Porter Circuit Court, wherein, upon the issues joined, there was a trial before a jury, and a verdict for $48,900 was returned against defendant in favor of the plaintiff belting company and all of the intervening insurance companies jointly. With this general verdict the jury returned answers to several interrogatories. Over defendant's

motion for a new trial, assigning various reasons therefor, the court rendered judgment upon the general verdict. From this judgment defendant has appealed.

The following facts, among others, are alleged in the complaint: Plaintiff belting company, at the time of the fire, was engaged in the manufacture of rawhide leather, leather belts and all kinds of products and articles made out of rawhide and leather. It commenced business in the city of Hammond in January, 1898. Defendant was also engaged, at and prior to the time of the fire in question, in operating a factory in said city for the manufacture of various articles of equipment for cars and railroads. On the premises owned by one Towle, in the city of Hammond, there was situated a large frame building about three hundred feet long, east and west, about one hundred feet wide, and fifty feet high in the center, sloping to the eaves, which were about eight feet high. On the south side of this building there were two great wings, or ells, attached, one of which was about seventy-five feet wide. With the exception of the foundation walls, which were of brick, and the roof, which was of galvanized iron, the building was composed entirely of wood. The ells, or wings, were separated from the main building by wooden partitions. On May 1, 1898, plaintiff belting company leased from Towle, for a period of ten years, sixty-five feet of the entire west end of the west wing of said building, and took possession thereof, and at the date of the fire was using the same, and had therein a stock of hides, raw material, belts, belting leather in process of tanning, chemicals and other ingredients necessary for its use in said business. After said plaintiff had procured its said lease, and had taken possession of the premises, the defendant also leased the main building, hereinbefore mentioned, as a factory for its business, and took possession thereof, and continued in the manufacture of its product up to the time of the fire on August 2, 1901. Defendant used on its said premises, forges, furnaces

for heating iron, bolts, rivets, etc. As grounds of negligence the complaint alleged that the defendant constructed its furnaces in an improper manner, setting out the defects therein; that these furnaces were constructed for the use of oil as a fuel; that the oil was fed to the furnaces by pipes from adjoining tanks, and spread therein by means of an air blast; that the defendant negligently permitted and suffered the oil to be fed into the furnaces too rapidly, and in larger quantities than they could consume, and that by reason thereof said oil formed a surplus of vapor, gas and smoke; that on August 2, 1901, while the defendant so negligently and carelessly maintained said furnaces as aforesaid, and used said oil as a fuel for the purpose of heating rivets, etc., it so negligently and carelessly used said furnaces and the oil therein that said oil was carelessly and negligently forced into said furnaces in greater quantities than could be burned, and by reason thereof large quantities of gas, vapor and flame escaped from the openings of said furnaces against the walls and roofs of said building, by means of which they ignited, and the defendant negligently failed to control the fire, but negligently permitted it to escape therefrom into and through a portion of said building leased and occupied by the plaintiff belting company, and by reason of which said portion, together with all of its aforesaid property, was entirely consumed by fire and rendered worthless. The complaint closes by demanding damages in the sum of $120,000.

In passing, it may be said that, by an answer to one of the interrogatories, the jury found that the fire was not caused by any defect in the furnace. The evidence in the record, among other things, shows that about fourteen days after the fire, and as soon as the insurance money was adjusted, some of the stockholders of appellee belting company rented an old building in Hammond, and therein worked up for the market some of the material which was saved from the fire. Some

8     SUPREME COURT OF INDIANA,

Simplex, etc., Appliance Co. *v.* Western, etc., Belting Co.—173 Ind. 1.

time in the early part of December, 1901, these stockholders moved all the other material and machinery saved from the fire to Milwaukee, Wisconsin, and there, as it appears, organized a new company, leased a building, and commenced business, and this material and machinery were, as far as possible, used by this latter company. Appellee belting company introduced evidence at the trial to show that it required four years to reëstablish the business at Milwaukee, and place it on a paying basis.

At the trial S. M. Cantrovitz, one of the stockholders of appellee belting company, over the objection of appellant, was permitted to testify that appellee belting company had its first stock manufactured for the market in July, 1898. The following questions were propounded to him by said appellee, and answered over the objections of appellant: "Q. State whether there was any profit in your business the first year. A. No. Q. State, at the rate you were doing business manufacturing and selling at the time of the fire on August 2, 1901, what profits per year you were making. A. Between ten and fifteen per cent. Q. How much would that be per year? A. At that rate, the business we were doing would be something like $12,000 or $15,000.''

Another witness introduced by said appellee was asked and he answered the following question, over the objection of appellant: "State, taking into consideration the condition of your company's business at the time of the fire, the orders it had on hand, the expenses, etc., and the rate at which it was manufacturing and selling its products at that time, what were its net profits per annum? A. Twelve or fifteen thousand dollars.''

Appellee belting company contends that certain points raised by appellant relative to the exclusion of evidence by the court offered by it and in the admission of evidence over appellant's objections on the part of said appellee, must be dismissed without consideration, under the rule sustained and enforced in *Gunder* v. *Tibbits*

(1899), 153 Ind. 591, and authorities there cited, and for the further reason that the rulings of the court in this respect were not properly assigned by appellant as grounds for a new trial. These contentions appear to be verified by the record, consequently these questions raised by appellant in its brief must be and are dismissed.

By instruction twenty-one, complained of and criticised by appellant, the court advised the jury that in the event it found for plaintiff belting company, it would be its duty to assess said plaintiff damages; that such damages should be the fair market value of the property at the time it was destroyed by the fire; that if any of the property was injured, but not entirely destroyed, then the jury should allow said plaintiff the difference in the value of such property as it was just before the fire and as it was directly thereafter. The court in this instruction further charged as follows: "In addition to this, if you find that said plaintiff at the time of the fire had established a profitable business, and that said business was destroyed, interrupted or injured by the burning of said plaintiff's property, as complained of, plaintiff is entitled to damages for such destruction of, interruption of, or injury to, said business, if you find that any damage resulted therefrom; and in estimating this element of damages you have the right to consider the character, condition and extent of such business at the time of the fire, and the net profits, if any, which were then accruing therefrom, and the reasonable prospects of a continuation of profits, and from these considerations you should award said plaintiff such a sum as in your judgment would be a fair compensation for the destruction of, interruption of, or injury to, said business."

Instruction twenty-three, which appellant claims to be erroneous, is as follows: "In determining the length of time in which plaintiff belting company, by the use of reasonable diligence, might have reëstablished its business, you have the right to consider not only the time it would reasonably have

taken to secure a location, building and equipment for its factory, but also the time reasonably necessary to reëstablish its patronage and trade, if you find that its patronage and trade were destroyed, interrupted or injured by the fire."

The case of *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, is a leading one in this jurisdiction relative to permitting the consideration of testimony in regard to 7. past and present profits in an action by a person to recover against a tort-feasor for the interruption or injury of an established business. In that appeal this court collected and considered numerous authorities upon that question. It was an action by the appellees therein to recover damages resulting from negligence of appellant city in constructing and maintaining its sewers, whereby water was cast upon and overflowed the premises of appellees, upon which was situated a large mill owned by them, which they operated in manufacturing the products of corn. This mill was supplied with machinery and appliances of great value. The premises in question were overflowed to such an extent that appellees were obliged to discontinue business for twelve days. The injury resulting from the water rendered it necessary to make costly repairs to the mill, and in making these repairs it required a cessation of appellees' business in operating their mill for a period of sixty days. Appellees were permitted to prove what was the fair average of the net profits of their business per day before it was interrupted by the wrongs of the defendant. In considering the point as involved in that case, the court said: "It will be observed that the question asked does not refer to future profits, but to the average profits that the mill was then earning or had earned. The testimony upon this question was * * * as to the profits that the mill had earned and was then earning. This is an important factor in the investigation, and distinguishes the case very clearly and very distinctly from those cases in which it is held that evidence of speculative prospective profits is not competent. The question here is, had

appellees a right to prove what profits their mill had earned in the past, and what it was earning in the then present? There was no attempt to prove what it might earn in the future. * * * It is not to be forgotten that the mill was and had been in active operation, with a known and established business. The case is for this reason not at all like one in which the business has not been in existence. * * * The appellees were certainly entitled to recover for the twelve days during which they actually ceased business. It was, therefore, competent to prove the average profits for the purpose of showing the actual loss during that period. * * * The evidence was competent to be considered in determining the compensation that appellee should recover for the time that would actually be lost in making repairs rendered necessary by the overflow. Of course, recovery could only be had for such a length of time as would be required to repair injuries attributable solely to the effect of the overflow, and in making such repairs the appellees would be bound to proceed with all reasonable care, skill and diligence. In holding the evidence competent to go to the jury to assist them in estimating damages, we by no means hold that the basis of the recovery is the profits that might be realized during the sixty days' interruption of business. We are far from declaring such a doctrine.''

In the trial of the case from which we have just quoted the court gave the following instruction: ''If you find from the preponderance of the evidence in this case that the plaintiffs' business as partners has been injured or interrupted by the defendant's wrongdoing, as complained of, this will form an element of damage which the plaintiffs will be entitled to recover; and with a view to awarding plaintiffs adequate compensation upon this branch of the damages, you will have a right to take into consideration the nature and extent of the plaintiffs' business at the time of the injury, if any, its past productiveness and its reasonable profits accruing to the plaintiffs in the past—not for the purpose, however, of meas-

uring the damages by expected or contingent profits of which the plaintiffs were deprived by such injury, but to assist the jury, in the exercise of a sound judgment, to arrive at a just and adequate compensation for the actual injuries sustained.'' This charge the court sustained, and in respect thereto said: ''It is true that this instruction is subject to verbal criticism, but it does not assert any erroneous legal proposition. Appellant's counsel are mistaken in assuming that it directs the jury that profits are to be considered as an element of damages. It asserts the very reverse of this, for its declaration is that the profits are not to be considered for the purpose of measuring the damages, but to aid the jury in arriving at a just conclusion as to the compensation for the actual injuries.''

Tested by the exposition of the law as given in the latter case, and by the authorities there cited, it is manifest that instruction twenty-one is so drafted that it is more calculated to confuse or mislead the jury than properly to advise it in regard to its right under the law in the consideration of the net profits of appellee belting company's business accruing prior to the fire. The charge does not, as it should, restrict or limit the jury to the consideration of these profits for the purpose only of aiding it to estimate damages to be awarded for the interruption or injury to said appellee's business. Under the charge the jury may have been led to believe that it had the right to take as a basis of recovery past profits, and from this estimate and award as damages the profits which the plaintiff might have realized during the entire period of the interruption of its business. Instructions which are calculated to confuse or mislead a jury, whether because of ambiguity therein or for any other reason, should not be given, for, as a general rule, on appeal they lead to a reversal of the judgment of the lower court.

Instruction twenty-three, under the evidence, is clearly wrong, because it advises the jury that in determining the

9. length of time within which appellee belting company might have reëstablished its business, it had a right to consider the time reasonably necessary to reëstablish its patronage and trade. The question of its future patronage and trade, upon the reëstablishment of its business, depended largely upon many facts and circumstances susceptible of variation. Consequently the question of its patronage and trade in the future was wholly a matter of speculation and conjecture, and the charge, for this reason alone, was erroneous. Again, the instruction does not advise the jury whether it contemplated the establishment of said appellee's business at Hammond, where its plant was located before the fire, or at the city of Milwaukee, Wisconsin, where, as the evidence shows, some of the stockholders organized a new company, and that it required four years at the latter city to place the business of the new company on a paying basis. That the company had a right to remove to Milwaukee and again go into business, either as an old or a new company, cannot be controverted, but upon no view of the case, under the evidence, can the length of time which was required to establish its business in that city be considered as a factor in the case for the estimation of damages on account of interruption of its business. For aught appearing in charge twenty-three, the jury may have believed that it was its duty to consider the length of time required to establish the business, not at Hammond, but at Milwaukee, and there place it on a paying basis.

For the giving of instructions twenty-one and twenty-three, the judgment is reversed and the cause remanded, with instructions to the lower court to grant a new trial.