WESTERN LIFE INDEMNITY COMPANY v. COUCH.

[No. 9,739. Filed April 18, 1919. Rehearing denied June 25, 1919.]

1. APPEAL.—*Record.—Rules of Court.—Substantial Compliance.*— Where there has been a substantial compliance with the rules of court requiring appellant to have the record paged and indexed and to have marginal notes made, the appeal will not be dismissed for failure to comply with the rules. p. 696.

2. INSURANCE.—*Life Insurance.—Action on Policy.—Question of Law.—Construction of Policy.*—In an action against a reinsuring company on a life policy issued by it; where both the original policy and the ones sued on and the reinsurance contract are set

out in the pleadings, it is a question of law whether the incontestable clause in the original policy became a part of the policy issued by defendant. p. 697.

3. INSURANCE.—*Life Insurance.—Construction of Policy.—Reinsurance.*—Where a reinsurance contract gave the policy-holders the option of paying the reinsurance company the same premiums, and receiving insurance in such amount as the premiums would purchase according to an annexed table of rates, or of making application, and by furnishing satisfactory evidence of insurability, receive a new policy upon surrendering the old one for cancellation, an incontestability clause contained in the old policy did not become a part of a new policy issued to one choosing the second alternative, in the absence of any provision to that effect. p. 697.

4. INSURANCE.—*Life Insurance.—Action on Policy.—Reply.—Sufficiency.*—In an action on a life policy, where the insurer answered that insured had falsely warranted that he was in good health and had never previously been refused insurance, and that, if it had known that insured was afflicted with a certain disease, which he fraudulently concealed, the policy would not have been issued, a reply alleging knowledge by the insurer that insured had previously applied for insurance, but not knowledge of the refusal of insurance, or of his disease, was insufficient as against demurrer. p. 698.

5. INSURANCE.—*Life Insurance.—Forfeiture of Policy.—Tender of Premiums.—Reasonable Time.*—Where insured died on April 30, and on August 10 following insured learned of breach of warranty, when it notified the beneficiary of its intention to rescind, and mailed her a check for premiums paid, which she returned without objection to the form of the tender, and, suit having been filed August 19, insurer on November 30 offered to pay the beneficiary in legal tender the amount of premiums paid, together with interest thereon and accrued court costs, the latter tender was made within a reasonable time. p. 700.

6. INSURANCE.—*Life Insurance.—Forfeiture of Policy.—Return of Premiums.—Reinsurance.*—Where a life insurance company became insolvent and one holding a policy therein exercised his option under a contract of reinsurance of surrendering his old policy, taking out a new one in the purchasing company, the latter company, in forfeiting the policy for a breach of warranty, was only required to repay the premiums paid to it. p. 700.

7. INSURANCE.—*Life Insurance.—Forfeiture of Policy.—Breach of Warranty.—Medical Examination.—False Answers.*—Where an application for a new policy in a reinsuring company referred to a medical examination for the original insurance and warranted the statements in it to be true, thereby making them a part of the

new policy, the reinsurer would forfeit such policy for a breach of warranty based upon false statements in the medical examination, although it was not made part of the original policy, and was not in itself a warranty. p. 701.

8. INSURANCE.—*Life Insurance.—Forfeiture of Policy.—Misrepresentation.—Health of Insured.—Refusal of Insurance.*—A false answer by an applicant for insurance that he had never been rejected by, or refused insurance in, any other company, in the absence of waiver or estoppel, renders the policy voidable at the election of the insurer, even though the statement is treated as a representation and not as a warranty. p. 703.

9. INSURANCE.—*Application.—Construction.—Intention of Parties. —Warranties.*—Answers to questions in an application for insurance will not be construed as warranties unless they are clearly shown by the form of the contract to have been so intended by the parties, but where it appears that they so intended they must be literally true or the insurance is voidable. p. 705.

10. APPEAL.—*Presenting Questions for Review.—Instructions.— Brief.—Record.—Duty of Appellee.*—When an applicant desires to challenge the correctness of any instructions given, he must see that all of the instructions given are in the record, but it is only necessary that he set out in his brief those that he claims are erroneous, and if there are other instructions given or tendered by appellant which overcome the alleged error, it is the duty of the appellee to call the court's attention to such instructions and to set them out in his brief. p. 706.

11. APPEAL.—*Presenting Questions for Review.—Refusal of Instructions.—Failure to Identify.—Record.*—Where appellant contends that it tendered instructions numbered from 1 to 19, and that the court erred in refusing to give certain of them, but the record discloses that the bill of exceptions shows that appellant tendered instructions numbered 1 to 20, and does not show those given and refused, no question is presented on appeal. p. 707.

12. INSURANCE.—*Life Insurance.—Forfeiture of Policy.—Estoppel.* —Where an insurer, after receiving information from an investigating bureau that insured had made false warranty as to the condition of his health, wrote a letter to the beneficiary containing no intimation of an intention to rescind, and requesting further proof, which she obtained at some expense, the insurer was not estopped from relying on the breach of warranty to forfeit the policy, where the beneficiary knew of the investigation being made by the insurer and that the policy would probably be contested. p. 710.

13. INSURANCE.—*Forfeiture of Policy.—Estoppel by Conduct.*—An insurance company is estopped to declare a forfeiture of an insurance contract, if with full knowledge of the facts, it states to the

beneficiary or causes him reasonably to believe that it does not intend to stand upon the right of forfeiture, and by such representations causes the beneficiary to do any act entailing expense and trouble upon the belief that the company has waived such right. p. 711.

14. INSURANCE.—*Life Insurance.—False Warranties.—Forfeiture of Policy.*—Where insured, in his application for insurance, warranted that he had never been refused insurance, the falsity of that warranty was sufficient to avoid the policy. p. 711.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Ida M. Couch against the Western Life Indemnity Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*T. J. Graydon, Condo & Browne* and *Blacklidge, Wolf & Barnes,* for appellant.

*Charles & Gemmill, Blaine H. Ball* and *Arthur H. Jones,* for appellee.

McMahan, J.—This is an action to recover on a life insurance policy issued by the appellant on the life of Orlando H. Couch.

The first paragraph of the complaint alleged that on October 1, 1913, the appellant issued to Orlando H. Couch its policy of insurance for $5,000, payable at death; that said Orlando H. Couch complied with all the requirements of the policy, and afterwards died; and that the appellee made all necessary proofs of death, but that appellant refused to pay the policy, and demanding judgment.

The second paragraph of the complaint alleged that on September 28, 1911, the Monarch Life Indemnity Company of Evansville, Indiana, issued and delivered to Orlando H. Couch and the appellee a joint policy of insurance in the amount of $5,000, payable to the survivor on death of either of said parties; that a receiver was thereafter appointed for the Monarch

company, who sold the business of said company to the appellant, and that a written contract of the sale was entered into between the receiver and the appellant, which, among other things, provided that the holders of policies in the Monarch company were given the right to continue the payment of the annual premiums which they had formerly paid to the Monarch company and receive from appellant such an amount of insurance as such premiums would pay for, under a rate set out in said contract; that said contract also provided that holders of policies like that issued to appellee and Orlando H. Couch should, by making written application therefor within one year from the date of said contract, receive, free of expense from appellant, a choice of three designated policies, provided that on said new policy the member should pay the premium rate of said Western company applicable to the member's age at the time of acceptance by the Monarch company; that on September 29, 1913, Orlando H. Couch and appellee, in accordance with said contract, made application to appellant for a new policy of insurance in the sum of $5,000, and that the appellant company issued to them a "cooperative dual life policy" payable to the survivor of them; that Orlando H. Couch died April 30, 1914; that the appellant failed to pay the policy, and demanding judgment.

The appellant filed an amended answer admitting all the material allegations of the complaint, and assumed the burden of proving a defense.

The answer set out the reinsurance contract mentioned in the complaint, and, after setting out the provisions thereof as alleged in the second paragraph of complaint, alleged that when the policy-holders in

the Monarch company made application for insurance they were required to furnish satisfactory evidence of insurability at the time of making such application; that appellant company in said contract reserved the same rights of defense against any liability as could have been exercised by the Monarch company in the absence of said agreement.

It was also alleged that, after the execution of said reinsurance contract, Orlando H. Couch and appellee did not elect to carry their joint life policy, for the reason that the premiums theretofore paid by them would only pay for an insurance of $2,000.99; that they elected to apply to appellant for the cooperative dual life policy upon their lives for $5,000; and that they made application for such new insurance on forms prescribed by appellant, a copy of which application is set out; that with their said application said parties furnished and delivered to appellant certain written statements, which were intended by the parties as satisfactory evidence of the insurability of said parties at the time of making such application, said written statement of Orlando H. Couch being also set out in full; that the policy of insurance sued upon was issued by appellant by reason of the foregoing facts, and not otherwise, and that the insurance policy theretofore held by said parties in the Monarch company was surrendered and canceled; that said policy of insurance so issued by appellant company was issued in consideration of and in full reliance upon certain statements and warranties contained in the said application made and signed by said Orlando H. Couch, September 29, 1913, and delivered by him to appellant prior to the execution by it of the policy sued upon; that as a part of said application Orlando

H. Couch delivered therein a "health certificate," which was signed by him and which was as follows:

"I hereby apply to the Western Life Indemnity Company for a dual life policy of $5,000 on my life, in substitution for policy No. 804 now held by me, which latter policy shall be void upon acceptance of this application by said company. * * * And as a basis of and consideration for said new policy, I hereby submit and warrant that I am now in sound health, that there is no cause in connection with my physical condition that would be a bar to my securing life insurance or in any way shorten my life; that I am not afflicted with any physical or mental defect or infirmity, that I have never suffered from * * * diseases of the liver or kidneys."

It is then alleged that the statements in said health certificate were false and untrue, in that the said Orlando H. Couch was not in sound health September 29, 1913, and at the time the policy sued upon was issued; that at said time his health and physical condition were such that they would be a bar to his securing life insurance, and were such as to shorten his life; that he was at said time afflicted with a physical defect or infirmity, was suffering from a disease of the liver and kidneys, and other named diseases, which continued to exist and afterwards caused his death; that on several occasions prior to September 29, 1913, and also prior to September 21, 1911, said Orlando H. Couch had had physical examinations made by reputable physicians, in which examinations his urine was tested, and it was discovered that there was present in the urine albumen; that said condition

of the urine indicated the existence, or the approach, of the diseased condition of said Orlando H. Couch hereinbefore described; that Orlando H. Couch was informed of the existence of said condition, and, for the purpose of obtaining the insurance policy sued upon, fraudulently concealed said information from appellant, although he knew at the time that appellant would not issue said policy of insurance or assume said insurance risk if it knew of the existence of said condition, and that he also fraudulently concealed said information from the Monarch company for the same purpose, knowing that, if it possessed said knowledge and information, it would not issue its policy of insurance; that all of said conditions existed prior to September 21, 1911, and Orlando H. Couch, for the purpose of obtaining the insurance at the time of making his application to said Monarch company, fraudulently concealed said information from said Monarch company, and never thereafter disclosed such facts to either the Monarch company or to the appellant company; that Orlando H. Couch, on September 21, 1911, and on September 29, 1913, knew that said conditions existed.

It is then alleged that the application made to the appellant company for the policy sued upon contained the following provisions:

"I hereby make the following warranties; * * * inasmuch as the policy hereby applied for in the Western Life Indemnity Company is issued in consideration of my present membership in, or contract with, the Monarch Life Indemnity Company, and as such latter membership or policy is based upon my application therefor to said Monarch Life Indemnity Company, I here-

by expressly warrant to said Western Life Indemnity Company that my said application to said Monarch Life Indemnity Company and the statements and warranties contained in said application, together with all agreements, medical examinations, revival applications and health certificates made by me to said Monarch Life Indemnity Company for the issuance, revival of or continuance in force of my said membership or policy therein, are and were true when made, and, if the same, or any part thereof, was untrue when made, then, and in that case, the policy hereby applied for in said Western Life Indemnity Company shall be void and of no effect.''

It is also alleged that: When Orlando H. Couch made application to the Monarch Life Company for said insurance policy, he made a statement in writing dated September 21, 1911, to his medical examiner, which became and was a part of his application to said Monarch Company for said policy of insurance, which medical statement and application contained the following question and answer: ''Have you ever been refused insurance in any company or order? A. No;'' that said statement and warranty was false in that the said Couch had theretofore made application for insurance upon his life with the Hartford Life Insurance Company, which application for insurance was refused and rejected by said Hartford Life Insurance Company prior to September 21, 1911; that said statement and warranty was false when made, in that, prior to making said application, he had applied for life insurance in the Mutual Life Insurance Company of New York, which application was also rejected and refused prior to September 21,

1911; that each of the foregoing statements of Orlando H. Couch were warranties and were material to the risk incurred by appellant, and that appellant, at the time of issuing the policy sued upon, had no knowledge of the falsity of such representations or warranties, but relied upon said statements and warranties, and would not have issued said policy sued upon if it had known that any part of said representations and warranties were false; that it did not learn of the untruthfulness of said statements until August 10, 1914, on which day appellant notified the appellee that the appellant had canceled and rerescinded the policy sued upon by reason of the misrepresentations and breaches of warranty on the part of Orlando H. Couch, and that appellant held itself accountable for the amount of premiums which had been paid on such policy, and on said day mailed a check to appellee for $188.35, drawn upon, accepted by, and certified to, by the Central Trust Company of Illinois, the above sum being the full amount of the premiums which had been paid on the policy sued upon; that all the transactions between the parties theretofore had been by checks on banks; that appellee knew that said check was valid; that she was unwilling to receive and accept the amount of the premium paid by Orlando H. Couch on said policy, and would not have accepted the same had tender been made in legal tender; that she returned said check to appellant without making objection to the form of the tender; that appellant, knowing the appellee was unwilling to receive the return of said premium, made no further offer to repay said money except as hereinafter stated; that the appellee refused to join in the cancellation of said policy of insurance, and filed

her complaint herein August 19, 1914, for the full amount of the policy and interest; that a summons was issued for appellant returnable October 1, 1914; that appellant was required to answer November 10, 1914, at which time appellant filed its first answer herein, and paid to the clerk of the court the full amount of the premiums paid upon said policy, to wit, $188.35, and in said answer declared said policy of insurance rescinded and canceled; that thereafter, on November 30, 1914, appellant tendered and offered to pay appellee in legal tender coin of the United States the sum of $201.62, being the principal and interest on said premiums, and that it also paid into the clerk's office the additional sum of $21.72, covering all the accrued court costs; that appellee refused to accept the return of said premium; that all of said money was on said day paid into court, and is now in the hands of the clerk for appellee's benefit and use, by reason of which facts it is alleged that the policy of insurance sued upon is null and void, and was not in force at the time of Orlando H. Couch's death.

The appellee filed a reply in five paragraphs, the first of which was a general denial. A demurrer was sustained to the second and third paragraphs. The fourth paragraph alleged the issuing of the policy by the Monarch company in September, 1911; the execution of the reinsurance contract between the receiver of the Monarch company and the appellant company; the application of Orlando H. Couch to the appellant for the policy sued upon; that the policy sued upon was issued in the place of, and as a continuance of, the policy issued by the Monarch company, in which it was agreed that said policy of insurance and appli-

cation therefor was the entire contract between the parties, said policy and application therefor being set out and made a part of the reply; that no medical examination was attached to or made a part of said policy; that by the express provision of said policy the medical examination referred to in appellant's answer was excluded therefrom; that, according to the terms of the Monarch life policy, it was incontestable after one year from its date, except for nonpayment of premiums; that more than one year had elapsed after it was issued before the death of Orlando H. Couch; that the Monarch company, at the time of issuing the policy, had full knowledge and information of the fact that Orlando H. Couch had formerly made "applications" for insurance upon which policies had not been issued, and that the Monarch company issued the policy to Orlando H. Couch with the information and knowledge of the facts and circumstances connected therewith; and that, at the time when the appellant company issued the policy sued upon, it had knowledge and information of such former "application" for insurance by Orlando H. Couch.

The fifth paragraph of reply alleged that, within a few days after the death of Orlando H. Couch, appellee prepared all the proofs of death as she believed to be necessary under the terms of the policy sued upon and forwarded same to appellant; that appellant, after the receipt of said proofs of loss and with full knowledge of all the facts set out in its second answer, requested and required appellee to make additional affidavits and proofs of death, which she did at great expense and trouble, and that, although appellant was fully advised and knew all the matters set

up in its answer, it did not notify appellee until long after the receipt by it of said additional proofs that any objection would be made by it to the payment of said policy of insurance sued on herein, and did not until long after said time inform her of its refusal to pay any sum due thereon by reason of the matters set forth in its answer. Wherefore she says that appellant has waived its defense in this action, and ought to be estopped to defend on account of the matter set forth in the answer.

The appellant filed a demurrer for want of facts to the fourth paragraph of reply, which was overruled and exception saved. There was a trial by jury, which resulted in a verdict in favor of appellee for $5,773.24. Appellee filed a remittitur for $369.24, and judgment was rendered for $5,414.

Appellant filed a motion for a new trial for the reasons that the verdict is not sustained by sufficient evidence, is contrary to law, and also because of alleged errors in the giving of certain instructions tendered by appellee, and in refusing to give certain instructions tendered by the appellant.

Appellee contends that the appellant has failed to have the record paged and indexed, and to have the marginal notes made as required by the rules of this court, and that the appeal should be dismissed. There has been a substantial compliance with the rules in relation to the preparation of the record, and when that is done the cause will not be dismissed.

The first error assigned is that the court erred in overruling the demurrer to the fourth paragraph of appellee's reply. This paragraph of reply contains two purported avoidances of the answer: (1) That

the policy issued by the Monarch company contained a provision that after one year it should be incontestable, and that more than one year had passed after it was issued and before the death of the insured; and (2) that when the Monarch company issued its policy to Orlando H. Couch it knew that he had formerly made "applications" for insurance upon which policies had not been issued, and that appellant at the time it issued the policy sued upon had knowledge and information of such former "application" for insurance.

The insurance policies issued by the Monarch Company and the one sued upon, together with the applications for insurance, the medical examinations, health certificate and the reinsurance contract are all set out in the pleadings, so that it is a question of law whether the incontestable clause in the Monarch policy became a part of the policy issued by the appellant. Under the terms of the reinsurance contract, Orlando H. Couch, as a member of the Monarch company, was given a choice of two options: (1) To continue paying to the appellant the same premium for the same period as was theretofore to be paid by him to the Monarch company, and be thereafter insured against death in the appellant company for such an amount of insurance as the premiums paid by him to the appellant would purchase according to the table of rates set out in the reinsurance contract; (2) within one year to make a written application on the form prescribed by the appellant and by furnishing satisfactory evidence of insurability at the time of making such application to receive from appellant, free of expense, a choice of three policies for any desired

amount within the limits fixed by the by-laws of the appellant, and for such new policy paying the rates applicable to his age at the time of becoming a member of the Monarch company. He chose the second option, entered into a new contract with the appellant, received a new policy insuring him against death, and no other contingency, and surrendered for cancellation his policy which had been issued by the Monarch company. The reinsurance contract expressly eliminated and excluded from the new policy "all benefits, privileges or conditions contained in the policy issued by the Monarch Life Indemnity Company other than the amount payable at death," which death benefit was made subject to the conditions expressed in the policy issued by the appellant.

The rights of the insured and the appellant were fixed by the terms of the policy issued by the appellant. The incontestability clause in the policy issued by the Monarch company had no bearing upon the policy sued upon; it was not made a part thereof, and did not bind appellant.

We next pass to that part of the reply relative to the former applications of Orlando H. Couch for insurance. According to the terms of the reinsurance contract appellee's decedent was not required to undergo a medical examination in order to secure the policy in suit, but he was required to furnish "satisfactory evidence of insurability," at the time of making his application, and this he undertook to do by signing the statement hereinbefore set out, in which he "expressly warranted" that his application and the statements and medical examination made by him to the Monarch company for insurance are, and were when made, true, and if the same, or any

part of the same, were untrue, the policy applied for in the appellant company should be void.

When the insured made his application for membership in the Monarch company, he submitted therewith, and as a part thereof, a medical examination, wherein he was asked if he had ever been refused insurance in any company or order, to which he answered "No." Appellant's answer alleged that prior to said time he had made application for and had been refused insurance in two different companies, which facts were unknown to appellant when it issued the policy in suit.

It will be observed that the reply does not meet all the allegations of the answer. The language of the reply is that the defendant had knowledge and information of such former "application" for insurance made by Orlando H. Couch. If we should hold that it was the intention of the pleader to allege knowledge of both applications mentioned in the answer, the reply would still be subject to demurrer on account of the failure to allege that appellant had knowledge that insurance had been refused. *Supreme Tribe, etc.* v. *Lennert* (1912), 178 Ind. 122, 98 N. E. 115. There are other allegations in the answer to the effect that the insured was afflicted with certain diseases, including kidney diseases, at the time he made application for the policy in suit, and that he knew of his diseased condition, and that appellant, if it were possessed of such information, would not have issued the policy in question; that he fraudulently concealed such facts from appellant; that such diseases continued and caused his death. The reply also fails to respond to this part of the answer, and is subject to demurrer for that reason. The appellee makes no

attempt to uphold the reply, except on the theory that "a bad reply is good enough for a bad answer."

The appellee, in support of this theory, insists that the answer is not sufficient, because it does not allege that all the premiums received by the Monarch company had been tendered to appellee, and that the appellant did not give notice of its intention to rescind the contract, or make tender of the premiums within a reasonable time. The insured died April 30, 1914. Appellant, in its answer, alleges that it did not learn of the untruthfulness of the statements made by insured until August 10, 1914, when it notified appellee of its intention to rescind, and mailed her a check for the amount of the premiums paid; that appellee returned said check, without objection to the form of the tender, and filed her complaint in this action August 19, 1914; that, on November 30, 1914, appellant tendered to appellee $201.62, that being an amount sufficient to cover the premiums paid to appellant, together with all interest thereon, and that the further sum of $21.72, an amount sufficient to cover and pay all the costs of this action, was tendered to appellee; that appellee refused to accept said tender, and that thereupon said money was paid into court for the use of appellee.

The tender of the $201.62, plus $21.72 costs, made November 30, was, under the circumstances, made within a reasonable time, and was sufficient in
5-6. amount. This being true, it is not necessary for us to determine whether the mailing of the check was a sufficient tender. The appellant was not required to return any of the premiums paid to the Monarch company, but was required to return only the premiums which it had received from the insured, amounting to $188.35.

The appellee next contends that the medical examination referred to in the answer contains no specification or stipulation of warranty, and is not 7. shown to have been made a part of the policy issued by the Monarch company, and that a breach of warranty cannot be based upon it.

It is not necessary that the medical examination should contain any stipulations of warranties, or that it should have been made a part of the policy issued by the Monarch company. It was made by the insured to the Monarch company, and in his application to the appellant he referred to this medical examination and warranted the statements in it to be true, thus making the said statement a part of his application for the policy sued upon. Under the conditions of the policy issued by appellant, a breach of warranty could be founded upon false statements made by the insured in his application to the Monarch company.

The answer alleged that at the time the insured made his application to the appellant for insurance he was not in sound health; that he was afflicted with certain diseases, which continued to exist and afterwards caused his death; that he had been examined by physicians, and was informed of his condition; that, for the purpose of obtaining the issuance of the policy sued upon, he fraudulently concealed said information, although he knew appellant would not issue the policy if it knew of his condition, and that appellant had no knowledge of his condition.

The health certificate, which was a part of his application presented to the appellants, contained the following statement:

"As a basis of and consideration for said new policy, I hereby submit and *warrant* that I am now in sound health, that there is no cause in connection with my physical condition that would be a bar to my securing life insurance or in any way shorten my life; that I have never suffered from" certain diseases, naming them.

Stipulations and conditions like these in an application are regarded in the nature of conditions precedent to the policy becoming effectual. The answer does not disclose the existence of a temporary ailment or indisposition not related to the permanent health of the insured, but rather to a serious and incurable condition of such a nature as to shorten his life, and antedating the application, and continuing without interruption thereafter until it terminated in his death.

The facts alleged show the existence of such a condition and such a breach thereof as rendered the policy void at the election of the insurer. *Ebner, Admr.,* v. *Ohio, etc., Ins. Co.* (1918), 69 Ind. App. 32, 121 N. E. 315; *Metropolitan Life Ins. Co.* v. *Solomito* (1916), 184 Ind. 722, 112 N. E. 521.

The answer set out in full the express warranty of the insured that the statements and warranties contained in his application and medical examination to the Monarch company for insurance were true when made, and alleged that in said medical statement he falsely stated that he had never been refused insurance in any company or order; that he had prior thereto made application for insurance upon his life with the Hartford Life Insurance Company, and also with the Mutual Life Insurance Company of New York; that both of said applications had been re-

jected and refused prior to the time when he so answered said question; that said statements were warranties and material to the risk incurred by appellant in the policy sued upon; that appellant had no knowledge of the falsity of said answer, and would not have issued the policy if it had known that said answer was false.

Under the application and policy of insurance involved in this case, the insured warranted the truthfulness of his statement that he had never been

8.   refused insurance. But, if this were treated as a representation, it would make no difference in our holding, for the answer alleges that his answer to said question was material to the risk, that it was false, and that its falsity was unknown to appellant.

A false answer by an applicant for insurance that he had never been rejected by, or refused insurance in, any other company, in the absence of waiver or estoppel, renders the policy voidable at the election of the insurer. *Supreme Lodge, etc.* v. *Miller* (1915), 60 Ind. App. 269, 110 N. E. 556; *Kelly* v. *Life Ins. Clearing Co.* (1896), 113 Ala. 453, 21 South. 361; *March* v. *Metropolitan Life Ins. Co.* (1898), 186 Pa. 629, 40 Atl. 1100, 65 Am. St. 887; *Finch* v. *Modern Woodman, etc.* (1897), 113 Mich. 646, 71 N. W. 1104; *Finn* v. *Metropolitan Life Ins. Co.* (1903), 70 N. J. Law 255, 57 Atl. 438; *American Life Ins. Co.* v. *Judge* (1899), 191 Pa. 484, 43 Atl. 374; *Security, etc., Ins. Co.* v. *Webb* (1901), 106 Fed. 808, 45 C. C. A. 648, 55 L. R. A. 122; *Webb* v. *Security, etc., Ins. Co.* (1903), 126 Fed. 635, 61 C. C. A. 383; *Home Life Ins. Co.* v. *Myers* (1901), 112 Fed. 846, 50 C. C. A. 544; *Nat. Life Assn.* v. *Hopkins* (1899), 97 Va. 167, 33 S. E. 539; *Moore* v. *Mutual, etc., Life Assn.* (1903), 133

Mich. 526, 95. N. W. 573; *Langdeau* v. *John Hancock, etc., Ins. Co.* (1907), 194 Mass. 56, 80 N. E. 452, 18 L. R. A. (N. S.) 1190; *Clemans* v. *Supreme Assembly, etc.* (1892), 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33; *Aetna Life Ins. Co.* v. *Moore* (1913), 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; *Prudential Ins. Co.* v. *Moore* (1913), 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. 367.

This is the rule even though the policy by its terms provides that such a statement shall be treated as a representation and not as a warranty. See *Ebner, Admr.* v. *Ohio, etc., Ins. Co., supra,* where this court had before it a policy which expressly made all statements in the application representations and not warranties. The court, speaking through Caldwell, J., said: "Knowing that he had made the application, he was bound to know that it had either been rejected or that it was pending, and, if pending, his answer was likewise false. * * * His answer that no physician had within the last ten years expressed an unfavorable opinion concerning his health was untrue, and likewise his answer that he did not have at the time of the application, and that he never had had, any disease of the heart. Under a provision embodied in the incontestability clause as above set out, the statements now under consideration should be dealt with as representations rather than warranties. Their nature is such that they should be regarded as material to the risk. * * * We then have a case of representations, false in fact and material to the risk. A material false representation is a ground for the avoidance of an insurance policy the same as any other contract. 14 R. C. L. 1021. Such a representation may be designated as a misrepresentation. A misrepresentation, as that term is used in its rela-

tion to insurance policies, is the statement of something as a fact which is untrue in fact, and which the assured states, knowing it to be untrue, with an intent to deceive the underwriter, or which he states positively as true, without knowing it to be true, and which has a tendency to mislead, such fact in either case being material to the risk. *Daniels* v. *Hudson River Fire Ins. Co.* (1853), 66 Mass. (12 Cush.) 416; (59 Am. Dec. 192); *Clark* v. *Union, etc., Ins. Co.* (1860), 40 N. H. 333, 77 Am. Dec. 721; 14 R. C. L. 1021. Such a misrepresentation has the force and effect of a positive fraud.''

If this be true in cases where the statements are to be treated as representations, there is certainly more reason for so holding in a case like the present where the contract makes them warranties.

Answers to questions propounded by an insurance company in an application for insurance will not be construed as warranties, unless they are clearly 9. shown by the form of the contract to have been so intended by the parties. But the parties have a right to make them warranties if they so desire, and when the contract so provides they must be literally true, or the insurance is voidable. A reading of the policy now under consideration and the application which is made a part of the policy leaves no doubt as to the intention of the parties. The statement, ''I hereby *expressly warrant* * * * that my application to said Monarch Life Indemnity Company and the statements and warranties contained in said application * * * medical examination and health certificate made by me to said Monarch Life Indemnity Company are and were true when made,''

is as explicit as any language can make it, and makes it clear that a warranty was intended.

The appellant's answer was sufficient, and it was therefore error to overrule the demurrer to the fourth paragraph of reply.

The next assignment of error relates to the overruling of the motion for a new trial. It is claimed that the court erred in giving instructions Nos. 8 and 18, given at the request of the appellee, and No. 3, given by the court on its own motion. The appellee calls our attention to the fact that the appellant has not set out all the instructions given and insists that it is the duty of the court to refuse to consider any question as to whether or not there is error in giving or refusing said instructions, and cites *Chicago, etc. R. Co.* v. *Williams* (1907), 168 Ind. 276, 79 N. E. 442, and *Ellison* v. *Ryan* (1909), 43 Ind. App. 610, 87 N. E. 244, in support of that contention. The rule was formerly as stated by appellee, but since the decision in the case of *Simplex, etc., Appliance Co.* v. *Western, etc., Belting Co.* (1909), 173 Ind. 1, 88 N. E. 682, the rule has been otherwise. The rule now is that when an appellant desires to challenge the correctness of any of the instructions given, he must see that all of the instructions given are in the record, but it is only necessary that he set out in his brief those that he claims are erroneous. If there are other instructions given or tendered by appellant, which overcome the alleged error, it is the duty and privilege of the appellee to call our attention to them and to set them out in his brief.

We have examined the instructions about which complaint is made. There was no error in the giving of any of them.

The appellant contends that it tendered instructions numbered from 1 to 19, and that the court erred in refusing to give certain of them. The appellee 11. calls our attention to the fact that the record discloses that the bill of exceptions shows that appellant tendered instructions numbered 1 to 20, and that the record fails to show which were given and which refused. We have examined the bill of exceptions, and are of the opinion that appellee's point is well taken, and that no question is properly presented on the refusal of the court to give the instructions tendered.

The appellant also contends that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law.

The undisputed evidence shows that in 1911, and prior to the time when the insured applied to the Monarch company for insurance, he had applied to the Hartford Life Insurance Company and also to the New York Mutual Life Insurance Company, and that both of said companies had refused him insurance because of the condition of his health; that on September 21, 1911, he applied to the Monarch company for insurance and submitted to a medical examination, in which he stated that he had never been refused insurance by any company; that his said statement was false; that he knew it was false; that he signed and presented his application to the appellant company as alleged in the answer, wherein he warranted that all the statements made by him in his application and medical examination to the Monarch company were true; that the appellant, when it issued the policy sued upon, did not know that he had been refused insurance; that it relied on the truthful-

ness of his statements, and did not learn of the untruthfulness of his statement until August 10, 1914, when it elected to rescind the insurance contract, and, as we have heretofore stated, mailed a check to appellee for the amount of premiums paid to appellant, and afterwards tendered her a sufficient amount of money to pay such premiums, interest and costs, and afterwards paid the same into court for the use of appellee; that the insured died April 30, 1914; that proof of death was received by appellant May 8, 1914; that this proof of death consisted of an affidavit made by appellee in which she gave the cause of death as ''chronic nephritis'' (which is a disease of the kidneys); that she did not know how long the insured had had this disease, and that Charles N. Brown had been the attending physician of the deceased for the last five years. The affidavit of Dr. Brown as the attending physician was also made a part of the proof of death. His affidavit, dated May 5, 1914, stated that he had attended the deceased during his last sickness, and that the health of the deceased began to be affected about a year before. (The policy in question was issued October 1, 1913.) Dr. Brown also stated in his affidavit that he was first consulted by the insured concerning the disease which caused his death in September or October, 1913, and that, in his opinion, the deceased had been afflicted with such disease one year, and that the final illness was not complicated with or preceded by any other disease. On June 26, 1914, appellant wrote a letter to appellee calling her attention to the fact that her affidavit stated the cause of death to be ''chronic nephritis,'' and that the insured's health first began to be affected about seven or eight months prior to his death, and

asking her to strengthen her memory to the utmost to indicate more exactly, if possible, when it became known to her or to the insured that he was afflicted with nephritis, and also calling her attention to the statements in the affidavit of Dr. Brown, and also asking her to favor appellant with her knowledge as to the condition of Mr. Couch's health for the last two or three years, and that she supply appellant with what informtaion she had concerning applications which he had made for insurance in recent years. This letter ended by telling her that, when appellant received her reply, it would act promptly in disposing of her claim.

On July 8, 1914, appellant again wrote to appellee, saying that no reply had been received to the letter of June 26, requesting further information, and insisting that appellee give the information requested .before appellant would make any definite disposition of the death claim, notwithstanding the threats made by her attorney to bring suit in case the claim was not paid before July 15. On July 16, appellant wrote a letter to J. L. Crouse, attorney for the appellee, acknowledging the receipt of his letter of the 11th instant, inclosing proofs of loss, and stating that additional affidavits which it deemed necessary were that day being mailed to appellee; that if, after a thorough review of all the available proofs, the appellant felt compelled to deny payment of the claim, it would frankly give him the reasons for so doing, and that if, on the other hand, it found that the proofs supported the claim, no time would be lost in making payment. The appellant had employed the Hooper Holmes Bureau to investigate the facts, and on July 14, received a letter to the effect that the bureau had

information to the effect that the insured was in bad health when he applied for the insurance, and that he had been rejected by two different companies. On July 16, appellant wrote to appellee to the effect that it had learned that her husband had been treated by Drs. Davis, Holliday and Greenleaf during the past three years, and inclosing blank affidavits with a request that she secure an affidavit from each of these physicians, and promising to make prompt disposition of the claim upon receipt of these affidavits. The appellee secured these three affidavits and mailed them to appellant some time in July. Appellant continued its investigations through the Hooper Holmes Bureau until August 10, 1914, when it wrote to appellee, giving her a full report of the facts disclosed by the investigation, informing her that it elected to rescind and cancel the policy, and inclosing her a check for the premiums paid to appellant. It also appears from the undisputed evidence that, after appellee received the letter of July 16, she secured the three affidavits called for; that her expenses in securing them were $25, not including her personal expenses.

The claim of appellee that the appellant ought to be estopped is based upon the fact that, after it received the letter from the investigating bureau on July 14, it called upon appellee for the affidavits of the three physicians, which she secured, and which cost her twenty-five dollars. The claim of appellee that appellant should be estopped cannot be upheld. When appellant requested that appellee secure these affidavits it informed her and her attorney that if, upon full investigation, her claim was found to be valid, it would be paid without delay, but

if it was determined otherwise, she would be frankly informed of the facts and the reasons why it would not be paid. Appellee and her attorney both knew that appellant was investigating the facts connected with the application for insurance, and that the validity of the policy would probably be contested. Appellee is therefore in no position to claim that she was misled by appellant.

An insurance company is estopped to declare a forfeiture of an insurance contract, if, with full knowledge of the facts, it states to the beneficiary, or causes the beneficiary reasonably to believe that the insurance company does not intend to stand upon the right of forfeiture, and with such representations and actions causes the beneficiary to do any act entailing expense and trouble, upon the belief that the company has waived the right of forfeiture. No such state of facts is shown to exist in this case. There is no evidence that appellee was misled by anything that appellant did, or that appellant did anything which can be construed as a waiver or estoppel.

The statement of the insured that he had never been refused insurance was a warranty, and, as such, must be absolutely and literally true. Such a statement cannot be deviated from in the smallest particular. Its falsity is sufficient to void the policy. *Catholic Order, etc.* v. *Collins* (1912), 51 Ind. App. 285, 99 N. E. 745.

Our conclusion is that the verdict is not supported by the evidence, and is contrary to law. The court therefore erred in overruling the motion for a new trial.

Judgment reversed, with instructions to sustain the motion for a new trial, to sustain the demurrer to

the fourth paragraph of reply, and for further proceedings not inconsistent with this opinion.