Mrs. John KINSELLA, (Plaintiff) Appellant,

and

Monsignor John T. Gulczynski, Pastor of St. Thomas Acquinas Catholic Church, (Plaintiff-Intervenor) (Cross-Claim Defendant) Respondent,

v.

Frank S. LANDA, as Executor Under a Purported Last Will and Testament Dated August 19, 1971, of Lillian B. Gleason, also known as Elizabeth L. Kottenhoefer

and

Frank S. Landa, (Defendant) Respondent.

No. 41336.

Missouri Court of Appeals, Eastern District, Division Two.

April 15, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1980.

Application to Transfer Denied July 15, 1980.

Husch, Eppenberger, Donohue, Elson & Cornfeld, John H. Percy, St. Louis, for appellant.

William A. Ens, St. Louis, for respondent.

GUNN, Presiding Judge.

Appellant was ordered dismissed as a party plaintiff in a will contest in the circuit court of the City of St. Louis on the ground that she lacked the requisite statutory interest in the probate of the will. She has appealed. The core issue for our determination is whether the right to contest a will is descendible.

The record discloses that in April, 1974, Lillian L. Kottenhoefer (hereinafter "Testatrix") died unmarried and without living descendants. Her closest surviving collateral relative was Frank Kottenhoefer, Jr., a nephew. On May 13, 1974, a writing dated August 19, 1971 was admitted to probate by the probate court of the City of St. Louis as the last will and testament of the Testatrix. That instrument left all Testatrix' property to defendant/respondent Landa, her mailman, who ultimately became proponent of the will (Proponent). On July 24, 1974, Frank Kottenhoefer, Jr., Testatrix' then sole heir-at-law, and his daughter, plaintiff/appellant Kinsella (Contestant) filed their joint petition to contest the August 19 will. Only ten days later, on August 3, Frank Kottenhoefer, Jr. died intestate, leaving Contestant as Testatrix' closest surviving kin. On October 23, 1974, within the six month statutory period dating from the probate of the Landa will, Contestant, as sole plaintiff, filed her amended petition to contest that will.

Following the death of Contestant's father, a will dated April 13, 1970, which purported to leave all Testatrix' property to a certain church in Dallas, Texas, was presented to the probate court and subsequently, on November 7, 1970, was rejected.

Thereafter, on November 27, 1974 the church (Intervenor) intervened in the Landa will contest, seeking to establish the church will as Testatrix' last will and testament. Contestant challenged the church Intervenor will by cross-claim. There then ensued a pre-trial skirmish in which a volley of motions was discharged by the respective parties against opposing positions. When the procedural smoke had cleared, Contestant's first amended petition challenging the Landa will had been dismissed on the basis she lacked the statutory interest under the will at the time of its probate to bring a contest (her father, the deceased contestant, being the only party then so interested in the eyes of the law). Simultaneously, her cross-claim challenging the Intervenor church will was allowed, inasmuch as she did in fact possess the necessary interest at the time that will was rejected, an event that followed the death of her father. Subsequent events proved this latter ruling a hollow victory. On Proponent's motion, Contestant was precluded from participating at trial as to the Landa will. Contestant then made an offer of proof based on information obtained at discovery suggesting, inter alia, that Testatrix had been incompetent at the time the will was executed. Intervenor presented no evidence regarding either will, and the trial consisted only of testimony as to the execution of the Landa will even though the original contest petition raised the issue of Testatrix' competency. At the close of his evidence, Proponent Landa was granted a directed verdict as to his will, thereby foreclosing further proceedings as to the earlier church will. Contestant's motion for new trial was denied on the basis she was without the "legal status" to file it, although the court's order in this regard included a caveat to the effect that, should its denial of the new trial motion for lack of standing be reversed on appeal, the court intended to grant the motion on the specific ground that the proponent failed to carry his burden of proof by an affirmative showing as

to Testatrix' competency at the time she executed the challenged will.[1]

From the orders dismissing her first amended petition and denying her the right to participate in the trial, and granting Proponent a directed verdict, Contestant appeals. For the reasons which follow, we reverse and remand for further proceedings.

Missouri's will contest statute, § 473.083.1 RSMo 1978, provides that the admission to probate or rejection of a will is binding "[u]nless any person interested in the probate of a will appears within six months after the date of probate or rejection thereof," or of the granting of letters, and files a petition challenging the probate or rejection.

Proponent successfully argued below, and so argues now, that Contestant is not a "person interested" in the probate of the Landa will under the cases construing this statutory language. The right to bring a will contest being "entirely dependent upon the statute," *Campbell v. St. Louis Union Trust Co.*, 346 Mo. 200, 139 S.W.2d 935 (banc 1940), an interest in the probate of a will is unquestionably a prerequisite to the bringing of a contest of that will. It is also clear that "interest" means a direct, pecuniary benefit resulting from the will's probate or rejection. *Campbell*, 139 S.W.2d at 937. Contestant's father, as Testatrix' sole heir-at-law, admittedly possessed such an interest. Further, Contestant succeeded to whatever interest her father possessed in Testatrix' estate upon his intestate death. However, Proponent argues that no right to bring or pursue a contest of the Landa will ever accrued in Contestant's favor because the critical interest in probate must exist *at the time of the probate*, citing *Campbell* and the cases discussed therein.

Although nothing explicit or implicit in the language of § 473.083.1 or its predecessors requires such a reading, the early Missouri cases construing the statute, relying on extrajurisdictional authorities, held that the interest required of a will contestant must exist at the time of probate. *Teckenbrock v. McLaughlin*, 246 Mo. 711, 152 S.W. 38 (1912). Subsequent cases expanded on this position and held that even where the right to contest properly accrues in favor of one who possessed the requisite interest at the time of probate, such right is personal to the contestant, not a property right, and is neither assignable or descendible. *Braeuel v. Reuther*, 270 Mo. 603, 193 S.W. 283 (1917); *Campbell v. St. Louis Union Trust Co.* Proponent would apply these principles to Contestant, barring her participation in the proceedings below either in her own right (because her "direct, pecuniary interest" in the probate of the Landa will arose *after* probate and upon her father's untimely death), or by pursuing her father's right of contest (as that right, being personal, ceased to exist upon his death).

Contestant concedes that the right to bring a will contest was neither assignable nor descendible under § 473.083 prior to 1973. However, Contestant's principal contention on appeal is that Missouri's legislature changed this rule when it amended § 473.083 in 1973 by adding subsection 6 (now numbered subsection 7). Thus, Frank Kottenhoefer, Jr.'s right to contest the Landa will descended to Contestant upon his intestate death.

Prior to 1973, the right of contest to a will was non-assignable and non-descendible. The rationale supporting this rubric was that a properly instituted contest could not be voluntarily dismissed by the parties. Hence, it did not abate upon the death of a contestant and no revival and substitution by the deceased contestant's representative or descendants was necessary to protect the decedent's interest:

A proceeding to contest a will, however, is possessed of peculiar features. After a will has been probated, an action

---

1. It is firmly established in Missouri that when, as here, the competency of a testator is placed in issue in a will contest, the proponents have an absolute burden, independent of any showing by the contestants, of going forward with evidence that the testator had testamentary capacity at the time of the execution. *Brug v. Manufacturer's Bank & Trust Co.*, 461 S.W.2d 269 (Mo. banc 1970); *Houghton v. Jones*, 418 S.W.2d 32 (Mo.1967).

questioning its validity casts upon those who claim under it the burden of proving it. Although the contestants who have brought the action may introduce no evidence, and may even abandon the contest, the burden of proving the will still devolves upon those who would maintain it. . . . [I]t follows that the question as to the survival or continuance of actions of this character in the event of the death of parties thereto is eliminated from the equation. Upon the action being brought, the parties thereto become of minor importance; the prime purpose of the proceeding being to determine whether there is a will or not.

. . . [T]he question naturally arises as to who will represent the interests of such contestants in the event of their death pending a proceeding as in the case at bar. . . . [S]uch representation is not necessary. The purpose of the proceeding is to determine whether or not there is a will. The contestants under our law are mere instruments in effecting this purpose, and the suit, having been brought by them, cannot be dismissed, but must be finally determined, although the contestants acted voluntarily in the first instance in bringing the action. Having so acted, their powers cease, except to see that the proponents establish the will. Whether, however, they see to this or not is a matter of indifference, because, the action having been begun, the duty devolves upon the trial court to see that it is finally determined . . . . . *Braeuel v. Reuther*, 193 S.W. at 284–286.[2]

By the addition of current subsection 7 to § 473.083, the legislature gave the parties to a will contest the power to dismiss it prior to final determination of the issue *devisavit vel non*.[3] The rationale for the pre-1973 rule of non-descendibility is thus no longer valid. By granting the parties additional control over contest proceedings, the legislature has ameliorated their "peculiar" nature and made the right to bring such contests more substantial than it had been previously. We conclude that under § 473.-083.7, RSMo 1978, the right to contest a will is no longer an ephemeral personal right that evaporates upon the death of the party possessing it. It has become a substantial property right that survives its owner and is exercisable by his personal representative or heirs.

This conclusion comports with principles firmly established in other jurisdictions. Missouri was one of a very few states that drew a distinction between an heir's putative interest in an estate and the "personal" right to protect that interest from divestiture under an invalid will by bringing a contest. The injustice that is occasioned by the circumstance that the interest descends but the right to protect it does not, is manifest. The maxim that "a personal action dies with the person" has been recognized by leading commentators as without basis in logic or common sense and is largely discredited in modern times. *See*: *Kleinschmidt v. Matthieu*, 201 Or. 406, 266 P.2d 686 (banc 1954), and the authorities there collected. Some jurisdictions do not distinguish between an interest in an estate and the right to protect it by will contest at all, so that transfer of the interest automatically entails transfer of the right of contest. *In re Waterbury's Estate*, 18 Misc.2d 732, 189 N.Y.S.2d 32 (1959). Others specifically recognize the right of contest as itself a property interest, a fully transferable chose in action arising out of the attempt to

**2.** We note that every authority cited by the *Braeuel* court for the proposition that the right of contest is personal and not a property right, and hence non-descendible, was foreign and that each has since been overruled in its respective home jurisdiction. *Storrs v. St. Luke's Hospital*, 180 Ill. 368, 54 N.E. 185 (1899), overruled by statutory amendment. *See*: *Havill v. Havill*, 332 Ill. 11, 163 N.E. 428 (1928); *Ligon v. Hawkes*, 110 Tenn. 514, 75 S.W. 1072 (1903), dist'd and in effect overruled by *Winters v. American Trust Co.*, 158 Tenn. 479, 14 S.W.2d 740 (1929); *Diffenderffer v. Griffith*, 57 Md. 81 (1881), limited to its facts and in effect overruled by *Yingling v. Smith*, 254 Md. 366, 255 A.2d 64 (1969).

**3.** § 473.083.7, RSMo 1978, provides: "Any such action may be voluntarily dismissed, after the period of contest has expired, by consent of all parties not in default, at the cost of the party or parties designated, at any time prior to final judgment."

divest the contestant of property rights by an invalid will. *In re Baker's Estate*, 170 Cal. 578, 150 P. 989 (1915); *In re Clark's Estate*, 94 Cal.App. 453, 271 P. 542 (1928). Curiously, even Missouri recognizes that the right of contest follows the interest in the estate under certain circumstances, *e. g.*, where such an interest is attached by lien prior to the testator's death when the heir possesses only an expectancy. *Watson v. Alderson*, 146 Mo. 333, 48 S.W. 478 (banc, 1898), (creditor with lien on heir's interest allowed to maintain contest of will disinheriting heir).

In construing § 473.083 as amended by the addition of subsection 7 in 1973, we have been mindful that we must give the legislature's enactments a sufficiently liberal interpretation "so as to effectuate the true intent of the legislative act". Section 1.010, RSMo 1978; *State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833 (Mo. banc 1971). This is especially true when such enactments are remedial in nature. *Braeuel*, 193 S.W. at 285. We are also constrained to afford the will contest statute a reasonable interpretation. *Shaffer v. Cochenour*, 569 S.W.2d 320 (Mo.App.1978).

Continuing the non-descendibility rule relating to the right to contest in light of the 1973 amendment resulting in § 473.083.7 would be purposeless. The effect of such continuation would be to allow the contest to evolve into an *ex parte* proceeding, dismissable at the will of the proponents of a challenged instrument following the death of the contestant and expiration of the six month contest period. Such a capability on the part of the proponents having become "all the parties" to a contest upon the death of the contestant does not appear reasonable to us, nor comport with due process or the traditionally recognized purpose of the will contest to ultimately determine the issue *devisavit vel non*. We believe that a reading of the statute working such a result is unreasonable and does not reflect the "true intent of the legislative act."

The maxim that "statutes in derogation of the common law are to be strictly construed" has been applied to the will contest statute in the past as justification for the rule of non-descendibility. The assumption that the will contest statute is in derogation of common law, however, is not strictly accurate. Will contests as we know them did not exist at common law, because wills, insofar as they devised realty, were not probated in the first instance. A devise of an interest in real estate took effect upon the testator's death regardless of the validity of the will, and the effectiveness of a will as a muniment of title was then challengeable through the usual causes of action for trying title to realty, such as ejectment or partition. *See*: *Crawfordsville Trust Co. v. Ramsey*, 178 Ind. 258, 98 N.E. 177 (1912). Thus, the cause of action of an heir disinherited by an invalid will would have passed to such heir's descendants, and a party in the position of Contestant here would have had a means for challenging the allegedly invalid will at common law.

The principal case is apt illustration of the impracticality worked by the non-descendibility rule, even where a contest has not been frustrated by a proponent's unilateral dismissal following the death of a sole contestant. As applied here, the rule frustrates the fundamental purpose of the contest statute in a way never contemplated by the drafters of the statute or the courts that gave the rule vitality in Missouri. It could place the most direct and telling evidence bearing upon Testatrix' testamentary capacity beyond consideration by the trial court, and even insulate the acknowledged error of that court from its own reconsideration as well as from review by this court. Contestant, when barred from participation at trial, made an offer of proof that suggests evidence existed of lack of testamentary capacity. Such evidence has been placed beyond the ken of the trial court by the circumstances of the original contestant's death.

It is an empty gesture to hold that the will contest does not abate upon the death of the contestant but proceeds to a final conclusion, when that "final conclusion" must be based on the results of an *ex parte* proceeding in which the most critical evidence is secreted from the court's consideration. The unreasonableness of the situation is exacerbated in this case, as the trial court has recognized that sufficient error existed

to warrant a new trial but concluded that retrial was foreclosed because no party existed with the "legal status" to request such relief. Appellate review would be unavailable for the same reason. To say that this case did not in effect abate upon the death of the original contestant borders upon fiction. Important, compelling evidence remains beyond the court's consideration; the prevailing party failed to carry his burden of proof; the trial court has even recognized its error, but the resultant judgment, infirm as it is, remains invulnerable to attack or review by the merest accident of the death of the party. To the extent that the rule of non-descendibility depends upon the assumption that a contest does not abate upon the contestant's death, it is untenable. For our part, we cannot conclude that the legislature intended that the ordinary rules of trial practice, due process and appellate review be thus subject to Atropos' whim. We must decline to ascribe any such intention to the 1973 amendment of the contest statute. Contestant succeeded to whatever interest her father possessed in the estate of Testatrix prior to culmination of the contest proceedings. We conclude that the statutory right to secure or protect that interest by contest must follow the interest itself. Contestant was entitled to proceed in her father's stead. In so ruling we are fully aware that we are bound to follow the standing decisions of the Supreme Court. *Workes v. Embassy Food Enterprises, Inc.,* 592 S.W.2d 864 (Mo.App.1979); *State ex rel. Bd. of Pub. Utilities v. Crow,* 592 S.W.2d 285 (Mo.App.1979). And our ruling involves no departure from that precept in view of the subparagraph 7 amendment to § 473.-083.

The legislature's action and our conclusion in this regard aligns Missouri with the preponderant majority of its sister jurisdictions. Among the states specifically declaring that the right of contest survives or is assignable are: California, *In re Field's Estate,* 38 Cal.2d 151, 238 P.2d 578 (banc, 1952); *In re Baker's Estate,* 170 Cal. 578, 150 P. 989 (1915); Connecticut, *In re Dickerson,* 55 Conn. 223, 10 A. 194 (1887); Indiana, *Crawfordsville Trust Co. v. Ramsey,* 178 Ind. 258, 98 N.E. 177 (1912); Iowa,

*Burk v. Morain,* 223 Iowa 399, 272 N.W. 441 (1937); *In re Wiltsey's Will,* 122 Iowa 423, 98 N.W. 294 (1904); Kentucky, *Hall v. Blackard,* 298 Ky. 354, 182 S.W.2d 904 (1944); Massachusetts, *Cawley v. Greenwood,* 192 Mass. 126, 78 N.E. 304 (1906); *Bonnemort v. Gill,* 167 Mass. 338, 45 N.E. 768 (1897); Minnesota, *In re Sheeran's Will,* 96 Minn. 484, 105 N.W. 677 (1905); New Hampshire, *Holt v. Rice,* 51 N.H. 370 (1871); New Mexico, *In re Morrow's Will,* 41 N.M. 723, 73 P.2d 1360 (1937); New York *In re MacKenzie's Will,* 247 App.Div. 317, 286 N.Y.S. 362 (1936); *In re Waterbury's Estate,* 18 Misc.2d 732, 189 N.Y.S.2d 32 (Surr. Ct.1959); North Carolina, *In re Thompson's Will,* 178 N.C. 540, 101 S.E. 107 (1919); Oklahoma, *Hodges v. North,* 134 Okl. 22, 272 P. 410 (1928); Pennsylvania, *In re Stewart's Estate,* 358 Pa. 434, 58 A.2d 42 (1948); Texas, *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Com.App.1928); Virginia, *Savage v. Bowen,* 103 Va. 540, 49 S.E. 668 (1905); Washington, *Ingersoll v. Gourley,* 72 Wash. 462, 130 P. 743 (1913); West Virginia, *Childers v. Milan,* 68 W.Va. 503, 70 S.E. 118 (1911); and Wisconsin, *Komorowski v. Jackowski,* 164 Wis. 254, 159 N.W. 912 (1916).

There is a decided trend among states that formerly subscribed to the minority view to fall in with the majority. *See,* e. g., *Curry v. Holmes,* 249 Ala. 545, 32 So.2d 39 (1947), (allowing revival of contest by personal representative on appeal without comment on prior Alabama cases holding right of contest personal and non-surviving); *Glos v. Glos,* 341 Ill. 447, 173 N.E. 604 (1930), (recognizing that new statute reverses prior rule of *Storrs v. St. Luke's Hospital,* 180 Ill. 368, 54 N.E. 185 (1899); *Yingling v. Smith,* 254 Md. 366, 255 A.2d 64 (1969); *Chilcote v. Hoffman,* 97 Ohio St. 98, 119 N.E. 364 (1918), (overruling *sub silentio* a line of prior Ohio cases); *Winters v. American Trust Co.,* 158 Tenn. 479, 14 S.W.2d 740 (1929). Only Georgia, *Pierce v. Felts,* 148 Ga. 195, 96 S.E. 177 (1918), and Michigan, *Butts v. Ruthven,* 292 Mich. 602, 291 N.W. 23 (1940) still clearly belong to the minority on the basis of somewhat aged authority.

In reaching our decision, we have carefully considered the state's and public's inter-

est in discouraging the proliferation of will contests. This policy must, however, be balanced against the interest of persons with substantial pecuniary interests in the devolution of estates to protect their interests. *See,* e. g., 27 Iowa L.Rev. 443 (1942). It is obvious that to rule against Contestant's right to participate in the will contest and persons similarly positioned would not further the countervailing public policy in any but the most marginal sense. It is unlikely that contests brought by persons succeeding to the rights of heirs who die during the six month statutory period would ever become statistically cognizable.

Accordingly the orders of the trial court dismissing Contestant's petition and barring her participation at trial are reversed. The judgment sustaining the Landa will is set aside, and the cause remanded for further proceedings consistent with this opinion.

STEPHAN and PUDLOWSKI, JJ., concur.